NO. 07-02-0091-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



APRIL 10, 2002



______________________________




JESSE J. RAMIREZ, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE COUNTY COURT AT LAW NO. TWO OF LUBBOCK COUNTY;



NO. 2001-473,044; HONORABLE DRUE FARMER, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 Appellant Jesse J. Ramirez filed a Motion to Dismiss Appeal on April 4, 2002,
averring that he no longer wishes to prosecute his appeal. The Motion to Dismiss is
signed by both appellant and his attorney. 

 Without passing on the merits of the case, appellant's motion for voluntary dismissal
is granted and the appeal is hereby dismissed. Tex. R. App. P. 42.2. Having dismissed 


the appeal at appellant's personal request, no motion for rehearing will be entertained and
our mandate will issue forthwith. 



 Phil Johnson

 Justice









Do not publish.



oncurring). \
'

var WPFootnote8 = '
[1st] Pool v. Tex. Dep’t. of Family & Protective Services, 227 S.W.3d 212, 215\
(Tex.App.–Houston [1st Dist.] 2007, no pet.); [2nd] In re D.A.R., 201 S.W.3d 229, 231\
(Tex.App.–Fort Worth 2006, no pet.); [3rd] Coey v. Tex. Dep’t of Family & Protective\
Services, No. 03-05-0679-CV, 2006 WL 1358490, *2 (Tex.App.–Austin May 19, 2006, no\
pet.) (not designated for publication); [4th] In re S.E., 203 S.W.3d 14, 15 (Tex.App.–San\
Antonio 2006, no pet.); [5th] In re M.D., __ S.W.3d __, No. 05-06-0779-CV, 2007 WL\
1310966, *1 (Tex.App.–Dallas May 7, 2007, no pet.); [6th] In re H.H.H., No. 06-06-0093-CV,\
2006 WL 2820063, *1 (Tex.App.–Texarkana Oct. 4, 2006, no pet.) (not designated for\
publication); [7th] In re R.C., __ S.W.3d __, No. 07-06-0444-CV, 2007 WL 1219046\
(Tex.App.–Amarillo April 25, 2007, no pet.); [8th] In re C.B.M., 225 S.W.3d 703, 706 \
(Tex.App.–El Paso 2006, no pet.); [9th] In re J.F.R., No. 09-06-0115-CV, 2007 WL 685640,\
*1 (Tex.App.–Beaumont March 8, 2007, no pet.) (not designated for publication); [10th] In\
re J.W.H., 222 S.W.3d 661, 662 (Tex.App.–Waco 2007, no pet.); [11th] In re F.C.G., No.\
11-07-0068-CV, 2007 WL 2823685, *1 (Tex.App.–Eastland Sept. 27, 2007, pet. filed Nov.\
6, 2007) (not designated for publication); [12th] In re J.H., No. 12-06-0002-CV, 2007 WL\
685640, *2 (Tex.App.–Tyler Jan. 24, 2007, no pet.) (not designated for publication); [13th]\
In re R.M.R., 218 S.W.3d 863, 864 (Tex.App.–Corpus Christi 2007, no pet. h.); [14th] In re\
C.M., 208 S.W.3d 89, 92 (Tex.App.–Houston [14th Dist.] 2006, no pet.). \
\
'

var WPFootnote9 = '
Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). \
'

var WPFootnote10 = '
§ 161.001(1)(D).
\
'

var WPFootnote11 = '
§ 161.001(1)(E).
\
'

function WPShow( WPid, WPtext )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'visible'" );
 else
 {
 if( floatwnd == 0 || floatwnd.closed )
 floatwnd = window.open( "", "comment", "toolbars=0,width=600,height=200,resizable=1,scrollbars=1,dependent=1" );
 floatwnd.document.open( "text/html", "replace" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( "\r\n" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}







NO. 07-07-0042-CV
 
IN THE COURT OF APPEALS
 
FOR THE SEVENTH DISTRICT OF TEXAS
 
AT AMARILLO
 
PANEL A
 
FEBRUARY 25, 2008
 
______________________________
 
 
            IN THE INTEREST OF J.O.A., T.J.A.M., T.J.M., and C.T.M., CHILDREN   
_________________________________
 
FROM THE 100TH DISTRICT COURT OF COLLINGSWORTH COUNTY;
 
NO. 7019; HONORABLE PHIL VANDERPOOL, JUDGE
 
_______________________________
 
Before CAMPBELL and HANCOCK and PIRTLE, JJ.
OPINION
          This is an accelerated appeal of a final order rendered under subchapter E of
chapter 263 of the Texas Family Code pertaining to the placement of four children. As to
two children, J.O.A. and T.J.A.M.,


 the order names a relative of the children as their
managing conservator; and, as to two children, T.J.M. and C.T.M., the order involuntary
terminates the parental rights of Appellants, Timothy and Trena,


 and appoints the Texas
Department of Protective and Regulatory Services as managing conservator. Appellants
jointly raise ten points of error. Points of error one and two challenge the constitutionality
of § 263.405(b) and (i) of the Texas Family Code,


 while points of error three through ten
challenge the findings of the trial court and the sufficiency of the evidence.
          The Department’s brief presents eight issues and the brief filed on behalf of the
children by their attorney ad litem presents four issues. Although not clearly designated
as such, the “issues” presented by the Department and the attorney ad litem are in
actuality responses to Appellants’ points. When practicable, an appellee’s brief should
respond to the appellant’s issues or points in the order that the appellant presented those
issues or points. Tex. R. App. P. 38.2(a)(2). Because both the Department and the
attorney ad litem contend that the order of the trial court should be affirmed, we will treat
their issues as a response to Appellants’ points of error and will not otherwise address their
issues individually. 
          Relying upon § 263.405(i), the Department contends that Trena and Timothy are
precluded from having any of their arguments addressed because they failed to file a
statement of points with the trial court within fifteen days after the entry of the final order
as required by § 263.405(b). The Department further contends that constitutional
complaints were waived because they were not timely and properly presented to the trial
court and preserved for review. As to the non-constitutional issues, the Department and
the attorney ad litem contend that the trial court’s order is supported by the law and the
evidence. We affirm in part and reverse and remand in part.
Procedural Background
          The Department of Family and Protective Services filed suit seeking (1)
determination of the parentage of J.O.A.;


 (2) termination of the parental rights of Trena
as to her children J.O.A., T.J.A.M., T.J.M., and C.T.M.; and (3) termination of the parental
rights of Timothy as to his children T.J.A.M., T.J.M., and C.T.M. Following a two-part
hearing conducted on August 16, 2006, and February 8, 2007,


 the court signed an Order
of Termination and Final Order in Suit Affecting the Parent-Child Relationship which
provided: 
          (1)      as to J.O.A., the trial court signed an order terminating the
parental rights, if any, of any alleged or unknown father, did not
terminate Trena’s parental rights; but did find that the
appointment of Trena as managing conservator would not be
in the child’s best interest and then appointed J.O.A.’s
maternal grandmother as his managing conservator, without
appointing Trena as a possessory conservator;
          (2)      as to T.J.A.M., the trial court did not terminate either Trena or
Timothy’s parental rights; however, the court did find that the
appointment of either parent as managing conservator would
not be in the child’s best interest and then appointed the child’s
maternal grandmother as her managing conservator, without
appointing either Trena or Timothy as a possessory
conservator; and 
          (3)      as to T.J.M. and C.T.M., the trial court terminated Trena and
Timothy’s parental rights and appointed the Department of
Family and Protective Services as managing conservator.
           The trial court’s final order was signed on February 16, 2007. On February 21st,
Trena’s trial counsel filed her notice of appeal and also filed a motion to withdraw. On
February 22nd, Timothy’s trial counsel filed his notice of appeal and also filed a motion to
withdraw. The trial court never ruled on the motions to withdraw; however, on March 5th,
(seventeen days after the date the final order was signed), the court appointed appellate
counsel to represent Trena, and on March 15th (twenty-seven days after the date the final
order was signed), the same appellate counsel was appointed to represent Timothy. 
Neither Trena nor Timothy filed a statement of points within fifteen days afer the date the
final order was signed as required by § 263.405(b) or a timely motion for new trial. Factual Background
          Trena is the biological mother of J.O.A., a male child born November 10, 1989. 
Trena and Timothy are the biological mother and father of T.J.A.M., a female child born
December 29, 1996, and T.J.M. and C.T.M., male twins born July 27, 2005.
          J.O.A. has lived with his maternal grandmother since he was four years old. 
T.J.A.M. has primarily lived with Trena, except for a period of approximately one and half
years while Trena was incarcerated. During that period, T.J.A.M. also lived with Trena’s
mother. T.J.M. and C.T.M. have never lived with either Trena or Timothy because they
were removed from their parents and placed in foster care before ever leaving the hospital
after their birth.
          Trena and Timothy have had many problems during their marriage, mainly due to
Trena’s persistent drug use. As a result, Trena and Timothy have not always lived
together. During periods of their separation, T.J.A.M. would primarily stay with either Trena 
or Trena’s mother. During their marriage, Trena was placed on probation for domestic
violence committed against Timothy. When Timothy was in his teens he was incarcerated
for aggravated robbery.


 His parole was subsequently revoked based upon an incident
of domestic violence committed against Trena. 
          For several years, Trena struggled with her use of drugs, primarily cocaine and
marihuana. She would have periods of sobriety and periods of drug use. Timothy also
struggled with the use of marihuana. Trena and Timothy have attended a substance
abuse program together. Trena was using drugs in early 2005 when she learned that she
was pregnant with C.T.M. and T.J.M. When the twins were born, they were premature. 
At that time, Trena admitted to marihuana use and tested positive by urine drug screen for
cocaine and barbiturates. At trial, she admitted to going on a five hour cocaine binge on
July 25, 2005, just prior to her giving birth to the twins. 
          This episode of involvement by the Department began when the twins were born.
On August 15, 2005, prior to the twins being released from the hospital, the Department
intervened on behalf of the children the subject of this suit and removed them from the
custody of Trena and Timothy. The Department’s immediate concern primarily centered
around the twins and Trena’s use of drugs. The two older children, J.O.A. and T.J.A.M.,
were placed with their maternal grandmother and the twins, T.J.M. and C.T.M., were
placed with foster parents.
          After the removal of the children, Trena was incarcerated from August 6, 2005, until
December 12, 2005, for possession of cocaine. In February of 2006, she was asked to
leave a women’s shelter after she tested positive for cocaine. She was incarcerated from
June 5, 2006, until June 16, 2006, for criminal trespass. At the August 2006 hearing,
Trena testified that she last used cocaine on May 25, 2006. She then tested positive for
cocaine on November 1, 2006 and January 3, 2007. During the period subsequent to the
removal of the children, she also failed to maintain steady employment or a place of
residence.
          After the removal of the children, Timothy was allowed supervised visitation with
T.J.M. and C.T.M; however, he was never allowed to have possession of the twins alone. 
Timothy did receive a copy of his service plan on September 26, 2005. He was
incarcerated from November 2005 until January 2006 on domestic violence charges that
allegedly took place in 2003. Those charges were subsequently dismissed after Trena
admitted to the prosecutor that she had falsely accused Timothy. In February 2006,
Timothy was advised that he needed to attend parenting classes and go for a drug screen
prior to February 24, 2006. He did not complete that drug screen. Timothy subsequently
moved to California where he attended a substance abuse program in May 2006. He
testified that he also attended parenting classes while in California. Timothy tested positive
for marihuana use in July 2006. At trial, Timothy admitted to using marihuana and testified
that the last time he had used marihuana was on or about June 28, 2006. He missed a
drug screen in October 2006. Additionally, Timothy was delinquent on his child support. 
After returning to Texas, Timothy had steady employment, a better car and house, had
daycare available, and was attending parenting classes. He also presented evidence of
three negative drug tests.§ 263.405(b) Statement of Points
          At the outset, we must address the Department’s contention that the failure to timely
file a statement of points, as required by § 263.405(b) of the Texas Family Code, 
precludes review of any of the issues raised. A party intending to appeal a final order
rendered under subchapter E of chapter 263 of the Texas Family Code must file with the
trial court, no later than fifteen days after the final order is signed, a statement of points on
which the party intends to appeal. § 263.405(b). The statement of points may be filed
separately or it may be combined with a motion for new trial. Id. An appellate court may
not consider any issue that was not specifically presented to the trial court in a timely filed
statement of points. § 236.405(i). 
          While several of our sister courts have questioned the practical application and
constitutional validity of this statute and have recommended that the Legislature reconsider
the statute in light of the potentially harsh effect of its application,


 every intermediate
appellate court in this State has agreed that the clear language of the statute prohibits
appellate courts from considering points not properly preserved by the timely filing of a
statement of points.


 
          The order being appealed in this case is a final order rendered under subchapter
E of chapter 263 of the Texas Family Code; therefore, Trena and Timothy were required
to file a statement of points. The failure to timely file a statement of points does not
deprive the appellate court of jurisdiction over the appeal; however, it is a procedural
prerequisite to the appellate court’s authority to consider any issue presented. See §
263.405(i). See also In re R.C., ___S.W.3d___ , No. 07-06-0444-CV, 2007 WL 1219046,
*1 (Tex.App.–Amarillo April 25, 2007, no pet.). Because Trena and Timothy’s points were
not preserved for review as otherwise required by § 263.405(b), we will proceed to consider
their constitutional challenge contending that their federal and State due process right to
effective assistance of counsel was violated by counsels’ failure to file a statement of
points.
Constitutional Challenge
          Relying on the recent decision in In re B.S., No. 09-06-0293-CV, 2007 WL 1441273
(Tex.App.–Beaumont May 22, 2007, no pet.) (not designated for publication), the
Department contends that Trena and Timothy’s constitutional challenge is precluded
because they failed to raise that challenge in a timely filed statement of points. In re B.S.
is clearly distinguishable from this case. In In re B.S., the appellant’s ineffective assistance
of counsel claims did not pertain to the failure to timely file a statement of points. Two
ineffective assistance claims, which were included in a timely filed statement of points,
were overruled because the appellant failed to establish ineffective assistance, and two
ineffective assistance claims, which were not included in a timely filed statement of points,
were also overruled based upon § 263.405(i). None of the appellant’s constitutionality
claims in In re B.S. rested upon a claim of ineffective assistance of counsel for failure to
timely file a statement of points. In this case, we are squarely faced with that challenge.
          The Department also contends that Trena and Timothy’s constitutional claims were
waived because they were not procedurally preserved by the filing of a motion for new trial. 
Relying upon In re B.L.D., 113 S.W.3d 340 (Tex. 2003), the Department argues that the
fundamental-error doctrine does not apply to procedural preservation rules, nor does due
process require appellate review of unpreserved complaints in parental termination cases. 
          However, Trena and Timothy contend that § 263.405(i) is unconstitutional, as
applied to them, because they were denied their due process right to effective assistance
of counsel. The Department also contends that Trena and Timothy’s constitutional
challenge is precluded because they failed to raise that challenge in a timely filed motion
for new trial. While we note an “as applied” constitutional challenge is waived if not raised
at the trial court level, see In re L.M.I., 119 S.W.3d 707, 711 (Tex. 2003); In re S.K.A., 236
S.W.3d 875, 887 (Tex.App.–Texarkana 2007, pet. filed Dec. 20, 2007), the very nature of
Trena and Timothy’s complaint is that they are being unconstitutionally deprived of their
right to present the merits of their appeal by being denied effective assistance of counsel. 
It matters not whether counsel failed to preserve their right of appeal by failing to file a
statement of points or a motion for new trial, the constitutional principals are the same. 
          We further acknowledge that as an established rule of judicial practice, appellate
courts should not decide constitutional questions when an issue can be resolved on non-constitutional grounds. See, e.g., In re B.L.D., 113 S.W.3d at 349. Therefore, if their
counsel was not ineffective we would not need to address their constitutional claims. 
Accordingly, we will proceed to discuss Trena and Timothy’s claims of ineffective
assistance of counsel before we address the merits of their constitutional due process
claims.Ineffective Assistance of Counsel
          Trena and Timothy allege that their counsel failed to provide competent assistance
after the termination proceedings in violation of their rights to due process of law. 
Specifically, they complain that their respective trial counsel were ineffective because they
failed to preserve a review of their complaints on appeal by neglecting to ensure that a
statement of points, as required by § 263.405(b), was timely filed. 
          In a suit filed by a governmental entity in which termination of the parent-child
relationship is requested, indigent parents who respond in opposition to the termination are
entitled to the appointment of counsel to represent their interests. See § 107.013(a)(1). 
This statutory right to the appointment of counsel necessarily embodies the right to
effective assistance of counsel at every critical stage of the proceeding. In re M.S., 115
S.W.3d 534, 544 (Tex. 2003). A “critical stage” in a termination proceeding is any stage
where substantial rights of the parties may be affected. Cf. Mempa v. Rhay, 389 U.S.128,
134, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967). 
          Because Texas provides the right of an appeal from a judgment terminating parental
rights, part of the process of ensuring the accuracy of judgments necessarily includes the
right to effective appellate review. In re M.S., 115 S.W.3d at 546. Though avenues of
appeal are not required to be established, it is now fundamental that once established,
these avenues of review must be kept free of unreasoned distinctions that can only impede
open and equal access to the courts. M.L.B. v. S.L.J., 519 U.S. 102, 111, 117 S.Ct. 555,
136 L.Ed. 473 (1996); In re M.S., 115 S.W.3d at 547. Not only must a parent be allowed
to appeal the termination of his or her parental rights, but that appeal must be meaningful. 
 In re S.K.A., 236 S.W.3d at 890.
          Because a statement of points is a procedural prerequisite for appellate review, the
deadline date for filing a statement of points is a critical stage of the proceeding. 
Accordingly, we hold that Trena and Timothy were entitled to effective assistance of
counsel through the deadline date for filing a statement of points in compliance with the
requirements of § 263.405(b). 
          In a suit in which termination of the parent-child relationship is sought, the
appropriate standard of review for effective assistance of counsel is the same standard set
forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104
S.Ct. 2052, 80 L.Ed.2d 674 (1984). See In re M.S., 115 S.W.3d at 545. The Strickland
standard is well-established, fairly straightforward, and places a sufficiently high burden on
the movant to establish: (1) counsel’s performance was deficient, and (2) the deficient
performance prejudiced the complaining party. Strickland, 466 U.S. at 687; In re M.S., 115
S.W.3d at 545. 
          When a party is represented by counsel during trial and the record does not reflect
trial counsel withdrew or was replaced by new counsel after judgment has been entered,
there is a rebuttable presumption that the trial counsel continues to represent that party
through the time limit for filing a motion for new trial. Cf. Smith v. State, 17 S.W.3d 660,
662-63 (Tex.Crim.App. 2000); Oldham v. State, 977 S.W.2d 354, 363 (Tex.Crim.App.
1998). In the case at bar, counsel for both Trena and Timothy indicated that they
understood that they had a continuing obligation when they prepared the individual notices
of appeal and when they filed their own motion to withdraw. Therefore, we conclude that
trial counsel’s duty to represent the interests of an indigent parent in a termination
proceeding does not end with trial but, instead, continues until the judgment becomes final
or until counsel is expressly discharged by the trial court. Because Trena and Timothy’s
respective trial counsel had not been discharged or replaced on or before the deadline
date for the filing of a statement of points, we find they had a duty to file a timely statement
of points in accordance with the requirements of § 263.405(b).
          With respect to whether counsel’s performance in a particular case is deficient, we
must take into account all of the circumstances surrounding the case and must primarily
focus on whether counsel performed in a “reasonably effective” manner; that is, whether
the errors made by counsel were so serious that counsel was not functioning as the
“counsel” guaranteed by the Sixth Amendment. In re M.S., 115 S.W.3d at 545, (quoting
Strickland, 466 U.S. at 687). Counsel’s performance falls below acceptable levels of
performance when the representation is so grossly deficient as to render the proceedings
“fundamentally unfair.” Brewer v. State, 649 S.W.2d 628, 630 (Tex.Crim.App. 1983); In
re M.S., 115 S.W.3d at 545. In making this determination, we must give great deference
to counsel’s performance, and we should find ineffective assistance of counsel only in
those situations where the challenged conduct was “so outrageous that no competent
attorney would have engaged in it.” In re M.S., 115 S.W.3d at 545 (quoting Garcia v.
State, 57 S.W.3d 436, 440 (Tex.Crim.App. 2001)).
            The filing of a statement of points is a straightforward procedure. That a statement
of points is required for appellate review of a final order rendered under subchapter E of
chapter 263 of the Texas Family Code is something that any competent trial counsel
practicing in this area of the law should know. Under the facts of this case, we find that
Trena and Timothy’s trial counsels’ failure to ensure that statements of points were timely
filed amounted to ineffective assistance, satisfying the first prong of the Strickland
standard. However, our inquiry does not end there. 
          Having determined that Trena and Timothy’s counsels’ failure to file statements of
points was deficient, we must now address the second Strickland prong and determine
whether the deficient performance prejudiced the complaining party. In this case, Trena
and Timothy both contend they have been prejudiced by their respective counsel’s failure
to file a statement of points because by failing to do so they have been deprived of the right
to show harm pertaining to the merits of their appeal. In essence, Trena and Timothy
complain that because they have been deprived of their right to present a meritorious point
of appeal, they have been harmed. To the extent that their issue is meritorious, we find
that there is a reasonable probability that but for counsel’s unprofessional error, the result
of the proceeding would be different. Accordingly, we find that Trena and Timothy’s
respective trial counsel provided ineffective assistance of counsel by failing to file a timely
statement of points.
Due Process Claims
          Recognizing that their legal and factual sufficiency claims are procedurally barred
by this failure to file a statement of points, Trena and Timothy contend that § 263.405(b)
and (i) violate their federal and State due process rights. Specifically, in their first and
second points, Trena and Timothy contend their due process rights, as guaranteed by the
United States and Texas Constitutions, have been violated because their trial counsel
failed to timely file a statement of points, thereby depriving them of their due process rights
to effective assistance of counsel.
          Because Trena and Timothy’s due process claims cannot be disposed of by non-constitutional means, we will proceed to consider their legal and factual sufficiency claims
in conjunction with their contention that their federal and State due process rights to
effective assistance of counsel was violated by counsels’ failure to file timely statements
of points. 
          The Texas Supreme Court has held that in cases where counsel was ineffective in
preservation of jury charge error, due process considerations did not require our procedural
rules to be set aside. See In re B.L.D., 113 S.W.3d at 351-54; In re J.F.C., 96 S.W.3d 256,
272-74 (Tex. 2002). The Court further suggested, however, that the failure to preserve a
factual sufficiency question might very well rise to the level of a due process violation
depending on a “different calibration of the [Mathews v.] Eldridge


 factors.” In re B.L.D.,
113 S.W.3d at 354; In re M.S., 115 S.W.3d at 547-48. In conducting an Eldridge due
process analysis, we must weigh these factors and then balance the net result against the
presumption that our procedural rules comport with constitutional due process
requirements. In re B.L.D., 113 S.W.3d at 354; In re M.S., 115 S.W.3d at 547.
Eldridge Factors
          Parental termination proceedings implicate fundamental liberties and such
proceedings must comply with the requirements of procedural due process. Santosky v.
Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The proper test for
analyzing the constitutionality of a procedure in the parental termination context is the
three-part balancing test established by Eldridge, 424 U.S. at 335. Determining what
process is due in a particular proceeding requires consideration of three factors: (1) the
private interest affected by the proceeding or official action; (2) the countervailing
governmental interest supporting use of the challenged proceeding; and (3) the risk of an
erroneous deprivation of that interest due to the procedures used. Id.
          Concerning the first Eldridge factor, the private interests at stake, the Supreme
Court has acknowledged that the right of a parent to maintain custody of and raise his or
her child “is an interest far more precious than any property right.” Santosky, 455 U.S. at
758-59. A parent’s interest in the accuracy and justice of a termination decision is a
“commanding one.” Lassiter v. Department of Social Services of Durham County, N.C.,
452 U.S.18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Both the parent and the child
have a substantial interest in that decision. Therefore, the parent’s fundamental liberty
interest in maintaining custody and control of his or her child, the risk of permanent loss
of the parent-child relationship, and both the parents’ and the child’s interest in a just and
accurate decision “weigh heavily in favor of permitting a factually sufficiency review” of the
evidence where counsel has unjustifiably failed to preserve that error. In re M.S., 115
S.W.3d at 548. On the whole, the parent’s and the child’s interests in ensuring that the
decision to permanently extinguish the family bond is an accurate and just decision weighs
heavily in favor of permitting appellate review of that decision, despite the statutory bar,
when assistance of counsel in meeting the procedural prerequisites has been effectively
denied. In re S.K.A., 236 S.W.3d at 893.
          The governmental interest in parental rights termination cases is to protect the best
interest of the child. In re B.L.D., 113 S.W.3d at 353. Indeed, the entire statutory scheme
of the Texas Family Code for protecting children’s welfare focuses on the child’s best
interest. See §§ 153.002, 161.001(2), 263.306(4) and (5). This interest is closely aligned
with the State’s interest to see that termination cases are not unduly prolonged. In re M.S.,
115 S.W.3d at 548. This policy is reflected in the statutory provision requiring that all
appeals from termination proceedings be given precedence over other civil cases and shall
be accelerated by the appellate courts. § 109.002(a). Factual sufficiency determinations
implicate greater appellate delays; however, the State’s interests in economy and efficiency
pale in comparison to the private interests at stake, and to the risk that a parent may be
erroneously deprived of his or her parental rights and the child may be deprived of the
parent’s companionship. Id. The State’s paramount interest in meeting the best interest
of the child is best served by a procedure that promotes an accurate determination of
whether the natural parents can ensure the safety and stability of the child. Id. at 549. 
Thus, the second Eldridge factor also weighs in favor of permitting a sufficiency review
when counsel unjustifiably fails to follow procedural requirements. Id.
          Perhaps the most critical Eldridge factor is the third factor, the risk of an erroneous
deprivation of parental rights. The “pivotal” fact in the analysis is that termination of
parental rights is “traumatic, permanent, and irrevocable.” Id. Termination divests for all
time that natural right as well as all other legal rights, privileges, duties, and powers existing
between a parent and a child. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). For this
reason, any significant risk of error is unacceptable. In re M.S., 115 S.W.3d at 549. In the
subjective world of a child’s best interest, absolute certainty can never be guaranteed;
however, the risk of an erroneous deprivation of parental rights based upon evidence that,
though minimally existing, fails to clearly and convincingly establish grounds for termination
should not be tolerated. Thus, if counsel unjustifiably fails to file a statement of points
raising a meritorious sufficiency of the evidence point, then such incompetency raises the
risk of erroneous deprivation too high, and our procedural rule governing preservation must
give way to constitutional due process considerations. When we balance the presumption
that our procedural rules comport with constitutional due process requirements against the
Eldridge factors, we conclude that those factors weigh in favor of review most in those
situations where a review of the sufficiency of the evidence raises the greatest concern for
the potential of an erroneous deprivation of parental rights. In other words, where
ineffective assistance of counsel has prevented a review of the sufficiency of the evidence,
and a review of the sufficiency of the evidence reveals that there is a high probability that
a parent’s rights have been erroneously terminated, then due process considerations (i.e.,
the Eldridge factors) weigh in favor of a sufficiency analysis, notwithstanding a procedural
impediment. We acknowledge that this reasoning will require an appellate court to review
both legal and factual sufficiency issues to determine if it should even consider those
issues. Any lack of logic in this process can be attributed to the lack of logic in the statute
itself.
          We do not hold that every failure to preserve error through the failure to file a
statement of points rises to the level of a due process violation. Our ruling is specifically
limited to that situation where trial counsel has failed to timely file a statement of points
raising a meritorious issue concerning legal or factual sufficiency of the evidence. 
Accordingly, in the context of a valid issue on appeal concerning the due process
considerations of effective assistance of counsel in preserving a legal or factual sufficiency
claim through the filing of a statement of points, we will proceed to review Trena and
Timothy’s legal and factual sufficiency points to determine if the Eldridge factors weigh in
favor of a consideration of those points notwithstanding the absence of a timely filed
statement of points. 
          We are mindful of the gut-wrenching environment within which parental termination
cases are decided, and we are sensitive to the subjectivity and lack of certainty that can
be obtained in even the best litigated parental-termination cases; however, in cases such
as the case at bar, where the Department seeks termination of both parents’ rights to
multiple children based primarily upon acts of one parent directed towards less than the
whole number of children, we cannot be swept away with an emotional determination of
the best interests of the children at the expense of factually sufficient grounds for
termination as to each parent, as to each child. In other words, although contextually
connected, the grounds for termination must independently exist as to each parent, as to
each child. Therefore, in our review of Trena and Timothy’s legal and factual sufficiency
points, we choose to address Trena’s points separately from Timothy’s, and we choose to
address each child independently. Standard of Review in Termination Cases
          In proceedings to terminate the parent-child relationship, the petitioner must
establish one or more acts or omissions enumerated by statute and must additionally prove
that termination of the parent-child relationship is in the best interest of the child. §
161.001. Both elements must be established and proof of one element does not relieve
the petitioner of the burden of proving the other. See Holley v. Adams, 544 S.W.2d 367,
370 (Tex. 1976). Because termination of parental rights is of such weight and gravity, due
process requires the petitioner to justify termination by clear and convincing evidence. §
161.001; In Interest of G.M., 596 S.W.2d 846, 847 (Tex. 1980). Clear and convincing
evidence is that measure or degree of proof which will produce in the mind of the trier of
fact a firm belief or conviction as to the truth of the allegations sought to be established. 
In re C.H., 89 S.W.3d 17, 25-26 (Tex. 2002). 
          In a legal sufficiency review of the evidence to support an order terminating parental
rights, we look at all the evidence in the light most favorable to the finding to determine
whether a reasonable trier of fact could have formed a firm belief or conviction that its
finding was true. § 101.007 (Vernon 2002), In re J.F.C., 96 S.W.3d at 266. To give
appropriate deference to the factfinder's conclusions and the role of a court conducting a
legal sufficiency review, looking at the evidence in the light most favorable to the judgment
means that a reviewing court must assume the factfinder resolved disputed facts in favor
of its finding if a reasonable factfinder could do so. Id. Thus, we disregard all evidence
that a reasonable factfinder could have disbelieved or found to have been incredible. Id. 
          The standard for reviewing the factual sufficiency of termination findings is whether
the evidence is such that a reasonable factfinder could form a firm belief or conviction
about the truth of the Department's allegations. In re C.H., 89 S.W.3d at 25-26. Under that
standard, we consider whether the disputed evidence is such that a reasonable factfinder
could not have resolved the disputed evidence in favor of its finding. In re J.F.C., 96
S.W.3d at 266. If, in light of the entire record, the disputed evidence that a reasonable
factfinder could not have credited in favor of the finding is so significant that a factfinder
could not reasonably have formed a firm belief or conviction, then the evidence is factually
insufficient. Id. When, as in this case, findings of fact and conclusions of law were not
filed, we must presume that every disputed fact issue was found by the trial court in
support of the judgment rendered. Fields v. Texas Emp. Ins. Ass'n, 565 S.W.2d 327, 329
(Tex.Civ.App.–Amarillo 1978, writ ref'd n.r.e.). Finally, we observe that only one statutory
ground is required to terminate parental rights under § 161.001. See In re S.F., 32 S.W.3d
318, 320 (Tex.App.–San Antonio 2000, no pet.). Therefore, we will affirm the termination
order if there is both legally and factually sufficient evidence on any statutory ground upon
which the trial court relied in terminating. Id. 
 

Trena’s Claims as to J.O.A. & T.J.A.M.
          Where termination of parental rights is not involved, the balancing of the Eldridge
factors does not warrant a due process review of Trena’s ineffective assistance of counsel
claims. Because the order being appealed does not terminate Trena’s parental rights as
to J.O.A. or T.J.A.M., we find that a review of the court’s order, as it pertains to either
J.O.A. or T.J.A.M., was not preserved for appeal because Trena failed to file a timely
statement of points as required by § 263.405(b). Consequently, point of error three is
overruled as to Trena.
Trena’s Claims as to T.J. M. & C.T.M.
          As to the twins, T.J.M. and C.T.M., the record reflects that Trena went on a five hour
cocaine and alcohol binge on July 25, 2005, just hours before they were born. The record
further reflects that Trena had a long history of drug and alcohol abuse. Because T.J.M.
and C.T.M. both tested positive for controlled substances at the time of their birth, we find
that the risk of an erroneous deprivation of Trena’s parental rights is slight from a
sufficiency of the evidence perspective. Therefore, upon balancing the Eldridge factors, we
further find that Trena’s ineffective assistance of counsel claims do not raise a
constitutional due process claim. Accordingly, we find that a review of the court’s order,
as it pertains to T.J.M. and C.T.M., was not preserved for appeal because Trena failed to
file a timely statement of points as required by § 263.405(b). Points of error one, two, six,
seven, nine, and ten are overruled as to Trena. 
Timothy’s Claims as to T.J.A.M.Where termination of parental rights is not involved, the balancing of the Eldridge
factors does not warrant a due process review of Timothy’s ineffective assistance of
counsel claims. Because the order being appealed does not terminate Timothy’s parental
rights as to T.J.A.M., we find that a review of the court’s order, as it pertains to T.J.A.M.,
was not preserved for appeal because Timothy failed to file a timely statement of points
as required by § 263.405(b). Consequently, point of error three is overruled as to Timothy.Timothy’s Claims as to T.J. M. & C.T.M.
          The Department alleged, and the court found, that termination of Timothy’s parental
rights as to T.J.M. and C.T.M. was appropriate under two separate grounds: (1) knowingly
placed or knowingly allowed the children to remain in conditions or surroundings which
endanger the physical or emotional well-being of the children;


 and (2) engaged in conduct
or knowingly placed the children with persons who engaged in conduct which endangers
the physical or emotional well-being of the children.



          T.J.M. and C.T.M. were removed from Timothy at birth. At all times relevant to their
lives, T.J.M. and C.T.M. were in “conditions or surroundings” dictated by the Department,
not Timothy. Therefore, there is no evidence that Timothy knowingly placed or knowingly
allowed T.J.M. or C.T.M. to remain in conditions or surroundings which endangered the
physical or emotional well-being of the children.
          To “endanger” the physical or emotional well-being of a child means “more than a
threat of metaphysical injury or the possible effects of a less-than-ideal family
environment.” Tex. Dep’t. of Human Services v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987)
(citations omitted). However, it is not necessary that the conduct be directed at the child
or that the child actually suffer injury, so long as the conduct exposes the child to loss or
injury. Id. Drug use and its effect on a parent’s life and his ability to parent may establish
an endangering course of conduct. In re A.J.H., 205 S.W.3d 79, 81 (Tex.App.–Fort Worth
2006, no pet.).
          While there was evidence calling into question Timothy’s parenting skills, Timothy’s
parenting abilities significantly improved following the Department’s involvement in the lives
of his children. Evidence supported Timothy’s efforts to clean up his life. Timothy
demonstrated a willingness to continue counseling and he established a support system
through his church and his family. He secured suitable housing and employment. He
exercised regular visitation, attended parenting classes, and demonstrated a pattern of
being drug-free. While Timothy was hardly the ideal father, based upon this record, we
cannot say that a reasonable and rational factfinder could have formed a firm belief or
conviction that Timothy engaged in conduct which exposed T.J.M. or C.T.M. to loss or
injury and jeopardized the children’s emotional and physical well-being because there is
insufficient evidence of Timothy’s continued drug use, subsequent incarceration, or other
anti-social behavior. Therefore, we find that the evidence is legally and factually
insufficient to support the predicate finding of conduct endangering the children. Having
found insufficient evidence of conduct endangering the children, we need not address the
second predicate, the best interest of the children. Accordingly, we find that the
termination of Timothy’s parental rights as to T.J.M. and C.T.M. is not supported by the
evidence.
          Having found that the risk of an erroneous deprivation of Timothy’s parental rights
as to T.J.M. and C.T.M. is high from a sufficiency of the evidence perspective, upon
balancing the Eldridge factors, we further find that Timothy’s ineffective assistance of
counsel claims do raise a constitutional due process claim. To the extent that § 263.405(i)
prevents this Court from considering those claims, we find it to be unconstitutional as
applied to the facts of this case. In re S.K.A., 236 S.W.3d at 894. Points of error one, two,
four, five, eight, nine, and ten regarding termination of Timothy’s parental rights to T.J.M.
and C.T.M are sustained. 
Conclusion
          Accordingly, we affirm that portion of the trial court’s order terminating the parental
rights, if any, of any alleged or unknown father as to J.O.A.; affirm that portion of the order
appointing the maternal grandmother as J.O.A.’s managing conservator; affirm that portion
of the order appointing the maternal grandmother as T.J.A.M.’s managing conservator;
affirm that portion of the order terminating the parental rights of Trena to the twins, T.J.M.
and C.T.M.; and reverse that portion of the trial court’s order terminating the parental rights
of Timothy to the twins, T.J.M. and C.T.M., and remand this cause to the trial court for
further proceedings consistent with this opinion. In reaching this decision, the Court makes
no judgment whatsoever as to whether it is in the best interest of T.J.M. and C.T.M. to be
physically placed with Timothy. The decision to allow T.J.M. and C.T.M. to live with
Timothy can, and should, only be made by the trial court based upon the best interest of
T.J.M. and C.T.M. after a review of the facts and circumstances as they exist at the time
of that review. 
 
                                                                           Patrick A. Pirtle

                                                                               Justice