Charles Edward BREWER & Gus Ross Radons, Appellants,

v.

The STATE of Texas, Appellee.

Nos. 64832, 64833.

Court of Criminal Appeals of Texas, En Banc.

May 4, 1983.

Alan Levy, George Preston, Denton, for appellants.

Henry Wade, Dist. Atty., W.T. Westmoreland, Jr., Jim Johnson and Mike Wilson, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

These are appeals from convictions for aggravated promotion of prostitution. Appellants Edward Brewer and Gus Radons were tried jointly. Both were represented by retained counsel Buzz Deitchman at trial. Punishments were assessed at five years imprisonment plus a $5,000 fine for Brewer and three years imprisonment plus a $2,000 fine for Radons.

Appellants contend that they were denied effective assistance of counsel because of the trial court's refusal to allow defense counsel to withdraw; the state violated appellants' Sixth Amendment right to counsel and the State Constitution by using an informant to disclose pretrial conversations between appellants and their counsel; and appellants were denied effective assistance because of dual representation by counsel.

Brenda Pogue was arrested by the Dallas Police Department on charges of prostitution. At the time of arrest Pogue was employed as a model by "Someone Special Modeling Enterprise." The "Modeling Enterprise" was owned and operated by appellants Brewer and Radons.

Following the arrest of appellant Brewer the prosecuting attorney offered Pogue immunity from prosecution in exchange for her cooperation in the investigation of "Someone Special." The prosecutors directed Pogue to attend a meeting between Brewer and Radons. Also present at the meeting was Buzz Deitchman who served as "house counsel" for the establishment, and represented appellants at trial. Pogue secretly tape recorded the conversation without revealing she was an informant. At trial the tape recording of this meeting was introduced as State's Exhibit No. 1.

A transcript of the taped conversation has been included in the record on appeal. A review of the transcript reveals Attorney Deitchman made numerous comments

which ranged from highly derogatory to insulting referring to the law enforcement establishment as well as the criminal justice system:

"[DEFENSE COUNSEL DEITCHMAN]: ... Mesquite, by and large, officers are mongoloid idiots out there and they, they don't tell Dallas vice, Dallas drug enforcement that they're doing this deal."

\* \* \* \* \* \*

"[DEFENSE COUNSEL DEITCHMAN]: ... You were going against some asshole, ignorant, illiterate son-of-a-bitch who's out there getting paid peanuts to be a sadist out in the middle of the street. You know, what motivates anybody to be a police officer is beyond me. Except they're just not smart enough to do anything else. They don't pay them worth shit."

\* \* \* \* \* \*

"[DEFENSE COUNSEL DEITCHMAN]: ... [Police officers are] the lyingest bunch of son-of-bitches in the world ... Dealing with them as police officers is fine. You know, they get on the witness stand and they, they think nothing of lying, you know.... [Y]ou know they're lying, they know they're lying, but, the juries are all snowed and that's why I always, and that's another reason they got hot...."

The most problematic aspect of Deitchman's remarks relates to his handling of the instant situation. Deitchman stated that he had prepared back-dated employment contracts to be used as a "block or hurdle" to the instant prosecution. He tells the appellants that "they can't be used in a court of law." Furthermore, Deitchman stated that he had observed the entire operation of the business and concluded that if his advice was followed there was only a "5 percent chance" that they would be arrested again.

Upon introduction of the taped conversation Attorney Deitchman presented a motion for mistrial and a motion to withdraw in which he requested that the trial court allow the appellants to retain new counsel. Specifically, Deitchman claimed a conflict

had arisen which required that he serve as both defense attorney and a fact witness. A hearing was held outside the jury's presence; Deitchman took the stand and testified in support of the motions. Both motions were denied.

Deitchman was unaware that he would be a potential witness at trial. Pogue had repeatedly told Deitchman that she would be a fact witness for the defense. She expressly denied to Deitchman working with the district attorney or police in their investigation of appellants. Thus, the testimony of Pogue effectively and unexpectedly placed Deitchman into a bifurcated role whereby he was defending both himself and the appellants. Additionally, Deitchman was a potential fact witness.

■■■ Appellants now contend that the trial court's refusal to grant defense counsel's motion for a mistrial denied them effective assistance of counsel. An accused in a criminal proceeding has a constitutionally protected right to the effective assistance of counsel, whether counsel is employed or is court-appointed. *Newton v. State,* 456 S.W.2d 939 (Tex.Cr.App.1970) (reh. den. 1970). When retained counsel's representation is so grossly deficient as to render proceedings fundamentally unfair the Due Process Clause of the Fourteenth Amendment to the United States Constitution is violated. *Fitzgerald v. Estelle,* 505 F.2d 1334 (5th Cir.1974), cert. den. 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675.

The standard employed in determining whether appellant received adequate representation is that of reasonable effective assistance. This determination must turn upon the individual circumstances of the case. *Ex parte Gallegos,* 511 S.W.2d 510 (Tex.Cr.App.1974); *Ex parte Prior,* 540 S.W.2d 723 (Tex.Cr.App.1976); *Benoit v. State,* 561 S.W.2d 810 (Tex.Cr.App.1977) (reh. den. 1977).

■■ A review of the entire record before us leads to the conclusion that appellants were denied effective assistance. The defense attorney's comments on the taped conversation were so damaging to his own

character and that of the appellants so as to make reasonably effective assistance impossible. Counsel had become a de facto co-defendant who had a personal interest which conflicted with the appellants. This conclusion is expressly supported by the state's closing argument:

"... But I think it's a reasonable deduction from the evidence that the meeting held at Buzz Deitchman [sic] office on Friday 8th was taped [sic] recorded was nothing more than a conspiracy to cover up the illegal and unlawful operation of a prostitution enterprise."

\*    \*    \*    \*    \*    \*

"... There was a cover up, I'm humbly sorry and I apologize to say that a member of the Dallas bar was involved in it. Do you remember on that tape he even monitored, he even monitored their operation and what did he say. Well, those percent, that 5 percent chance of getting busted. But our case is not against him."

The degree of damage done to attorney Deitchman's credibility is obvious. During closing argument the prosecution found it necessary to further remind the jury that Deitchman had not been indicted:

"[PROSECUTOR]: ... Let's not forget whose on trial here. Mr. Deitchman is not indicted. He is not accused by a bill of indictment of doing anything wrong."

█ It is generally within the discretion of the trial court whether or not trial counsel should be allowed to withdraw from a case. Cf. *United States v. Brown,* 417 F.2d 1068 (5th Cir.1969), cert. den. 397 U.S. 998, 90 S.Ct. 1140, 25 L.Ed.2d 407. In the instant situation however, the trial court abused its discretion:

"... [T]o secure relief for ineffective assistance of retained counsel there must also be an adequate showing of state action by failure of a responsible state official connected with the criminal proceeding (such as the trial judge or prosecutor) to take corrective action when that official had had actual or constructive knowledge of retained counsel's failure to deliver reasonably effective assistance." *Ex parte Ewing,* 570 S.W.2d 941 (Tex.Cr. App.1978).

Here the trial court was put on notice that reasonably effective assistance was impossible by the appellants' motion to withdraw and motion for a mistrial. By failing to grant the withdrawal the trial court abused its discretion. Attorney Deitchman's unethical behavior is inexcusable. However, it would be equally wrong to allow the appellants in the instant situation to be convicted with such blatantly ineffective representation.

Appellants argue that the state violated their respective Sixth Amendment rights to counsel by using an agent to tape record and introduce pretrial consultation between appellants and counsel. The Sixth Amendment to the United States Constitution guarantees that an accused shall be allowed effective assistance of counsel. U.S. Const. Amend. VI. The due process clause of the Fourteenth Amendment makes the guarantee of effective assistance fully applicable to the states. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

In *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), the United States Supreme Court examined the breadth and scope of Sixth Amendment protection as it relates to attorney-client consultations. In *Weatherford,* the Fourth Circuit Court of Appeals applied a per se rule that an informant's participation in attorney-client meetings violated the right to counsel and the due process clause of the Fourteenth Amendment, even though the district court had found that there had been no communication· of information to the government and even though the informant had been invited to the meetings. The Supreme Court rejected the Fourth Circuit's per se rule and thus reversed the decision. However, the Supreme Court carefully delineated the scope of its opinion:

"At the same time, we need not agree with petitioners that whenever a defendant converses with his counsel in the presence of a third party thought to be a confederate and ally, the defendant assumes the risk and cannot complain if the

third party turns out to be an informer for the Government who has reported on the conversations to the prosecution and who testifies about them at the defendant's trial. Had Weatherford testified at Bursey's [defendant's] trial as to the conversation between Bursey and Wise [Defense Counsel]; had any of the Government's evidence originated in these conversations; had those overheard conversations been used in any other way to the substantial detriment of Bursey; or even had the prosecution learned from Weatherford, an undercover agent, the details of the Bursey-Wise conversations about trial preparations, Bursey would have a much stronger case."

\* \* \* \* \* \*

"There being *no tainted evidence in. this case, no communication of defense strategy to the prosecution, and no purposeful intrusion by Weatherford,*[1] there was no violation of the Sixth Amendment insofar as it is applicable to the States by virtue of the Fourteenth Amendment." *Weatherford, supra.*

In *United States v. Levy,* 577 F.2d 200 (3rd Cir.1979) the Third Circuit Court of Appeals examined the implications which may be drawn from *Weatherford, supra.* Circuit Judge Gibbons, speaking for the court, noted:

"... We think that the Court was suggesting by negative inference that a Sixth Amendment violation would be found where, as here, the government enforcement officials sought such confidential information...."

The court in *Levy,* supra, concluded that the Sixth Amendment is violated whenever law enforcement officials deliberately intercept confidential attorney-client communications and disclose them to the prosecution.

■ In the instant situation the uncontroverted evidence on record demonstrates that: the informant Pogue had retained Deitchman as her attorney upon the offense

for which she was promised immunity; the informant Pogue was an integral part of the state's case against appellants and was in fact named in the instant indictment as a supporting participant; the informant Pogue was enlisted as an informant shortly after her arrest; the prosecutor directed her to attend and tape record meetings between the appellants and their attorney; the prosecutor requested that she not disclose she was an informant; the prosecutor used both the contents of the tapes and the informant's testimony at trial; and the tapes were available to the prosecutor during trial preparations. It is our conclusion that based on the language of the *Weatherford* decision the prosecutor's action in the instant situation violated appellants' Sixth and Fourteenth Amendment rights.

Appellants maintain that the introduction of the taped conversation between appellants, their attorney, and the informant violated the Texas Constitution, Article I, Sec. 10. In light of our disposition of this ground on a federal Sixth Amendment basis this ground of error need not be reached.

■ Appellants assert that they were denied effective assistance of counsel because they were both represented at trial by the same attorney. Appellants' attorney did not file a motion to withdraw until the trial was in progress. Further, the record reflects that the appellants had retained attorney Deitchman and nothing suggests that they were dissatisfied with his services.

"... A conflict of interest resulting from one attorney's dual representation of defendants charged with the same offense does not mandate reversal of a conviction unless the conflict resulted in ineffective assistance of counsel. [cites omitted]." *Ex parte Alaniz,* 583 S.W.2d 380 (Tex.Cr. App.1979) (reh. den. 1979).

In the instant situation no claim is made that appellants had inconsistent nor abrasive defenses. There is no showing that the appellants were not fully apprised of the

---

**1.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

potential risks inherent in their retained counsel's dual representation. See *Pete v. State,* 533 S.W.2d 808 (Tex.Cr.App.1976) (reh. den. 1976). Likewise, there is no showing of prejudice arising merely from appellants' dual representation. Cf. *Foxworth v. Wainwright,* 516 F.2d 1072 (5th Cir.1975).

The judgments are reversed and remanded.

CLINTON, Judge, concurring.

Unlike the majority I would reach the matter of right to counsel under Article I, § 10 of the Texas Bill of Rights. Conformably with proper procedure for appellate review, in a separate and distinct ground of error, Article 40.09, § 9, V.A.C.C.P., appellant has asserted a violation of his State constitutional rights, urging that the Court construe § 10 so as to protect fully "the right of a defendant to communicate with his attorney without intrusions by prosecuting officials.".

There are decisions of the Court—predating *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)—that vouchsafe privacy for and confidentiality of communications between attorney and client against official abridgement. See *Turner v. State,* 91 Tex.Cr.R. 627, 241 S.W. 162, 163–164 (1922) and *Ellis v. State,* 149 Tex. Cr.R. 583, 197 S.W.2d 351, 353 (1946); see also *McBride v. State,* 121 Tex.Cr.R. 549, 51 S.W.2d 337 (1932). Even if there were not, however, we would be justified—if not obliged—to hold that purposeful prosecutorial intrusion into an attorney-client relationship violates the right to counsel guaranteed by Article I, § 10, supra.

Indeed, to acknowledge and apply provisions of our own Bill of Rights is to insist upon contemporaneous recognition of their continued viability and vitality by all who are official participants in the criminal justice system of this State.

Accordingly, I concur in the judgment of the Court.[1]

---

1. The Court truly need not and, in my judgment, should not address the ground of error contending that appellants were denied effective assistance of counsel on account of a conflict of interest. The judgment must be reversed on other grounds, and in the event of another trial surely the one representing appellants before and during the trial of this cause will then be in another line of work.