**AFFIRM**; **and Opinion Filed September 9, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00324-CV

### IN THE INTEREST OF B.H., ET AL., CHILDREN

**On Appeal from the 305th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JC-16-00779-X**

## MEMORANDUM OPINION

Before Justices Brown, Schenck, and Pedersen, III
Opinion by Justice Brown

Father appeals the trial court's decree terminating his parental rights to his children B.H. and J.H. In two issues, Father contends the trial court abused its discretion in denying his motion to set aside a mediated settlement agreement (MSA) and his attorney rendered ineffective assistance of counsel in advising Father to enter into the MSA. We affirm the trial court's decree of termination.

BACKGROUND

This case was referred to the Texas Department of Family and Protective Services (Department) as a result of Mother's and Father's drug use and neglect of the children. Attempts to unify the family failed, and the Department took possession of the children and filed a petition seeking termination of the parent-child relationships.

The trial court entered an order requiring Father to participate in parenting classes, psychological evaluations, drug and alcohol assessment, random drug and alcohol analysis and hair strand tests, and to follow through with recommendations made by the service providers. According to a subsequent status order, the trial court found Father had reviewed and understood the service plan and had been "advised that unless he is willing and able to provide the [children] with a safe environment, even with the assistance of a service plan, within the reasonable period specified in the plan, his parental and custodial duties and rights may be subject to restriction or to termination or the child may not be returned to him."

Thereafter, the parties, including Mother and Father together with their attorneys, signed a MSA under section 153.0071 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 153.0071(c)-(f). In the MSA, Father agreed to termination of his parental rights "based on "O" grounds under section 161 of the [family code] and best interest." *See id*. § 161.001(b)(1)(O) (providing for termination based on failure to comply with provisions of court order specifically establishing actions necessary to obtain return of children). Father further agreed the MSA was entered in the best interest of the children. *See id*. § 161.001(b)(2). The MSA also provided the Department would conduct home studies of the children's grandfathers and, if the children were placed with one of the grandfathers, Father would be entitled to supervised visitation with the children on at least a quarterly basis.

Placement of the children with the maternal grandfather was denied following a home study. Initially, a home study was not conducted on the paternal grandfather because he requested withdrawal of his application for placement. Following a subsequent home study, however, placement of the children was denied due to the paternal grandfather's criminal history.

The trial court held a final prove-up hearing, and, although Father was represented by appointed counsel when he entered the MSA, he was not represented by counsel at the hearing.

–2–

The trial court nevertheless entered a decree of termination, adopting the MSA as a binding order and terminating Father's parental rights. Father appealed, contending he did not receive effective assistance of counsel because his attorney did not appear at the final hearing. *See In Interest of B.H.*, 05-18-00291-CV, 2018 WL 4443275 (Tex. App.—Dallas Sep. 18, 2018, no pet.). This Court agreed, reversing the trial court's decree as to the termination of Father's parental rights.[1]

On remand, new counsel appointed to represent Father filed a motion to set aside the MSA. The Department filed a motion to enforce the MSA. At a hearing on the motions, Father testified he did not read the MSA before signing it, but his attorney explained it to him. Although the MSA was silent as to visitation in the event the children were not placed with either grandfather, Father understood he would have quarterly visitation with the children "under any scenario." Father believed his attorney did not provide proper counsel because Father "wasn't fully aware what would happen at the end if [his] kids got adopted" and there was nothing in the MSA "that provided for what would happen after termination." Following termination, Father was advised he has no post-termination rights to enforce visitation. As a result, Father believed his visitation was materially misrepresented in the MSA and requested the trial court to set aside the MSA as unenforceable.

The parties also elicited testimony pertinent to the State's motion to enforce the MSA. Department case worker Casey Warren testified Father completed some of the "critical services necessary to obtain reunification" with the children, but did not comply with all of the services, including the "drug testing component." Specifically, Father tested positive on one drug test and failed to appear for numerous tests. He had "significant drug history," and his failure to complete drug testing as directed by the Department was a significant issue. Warren believed it would serve

---

[1] Mother also appealed, and this Court affirmed the trial court's decree as to the termination of her parental rights. She is not party to this appeal.

the best interest of the children if the trial court provided final relief so the children could be adopted.

Father testified he agreed in his service package to remain drug free and he took a hair strand drug test that was positive for methamphetamine. He also acknowledged he did not comply in submitting to drug tests when asked by the Department. Because he lived outside Dallas, he was unable to leave work and get to a drug testing facility on time. When he appeared at two of the drug tests, a hair strand test and a nail test, he was told his hair and nails, respectively, were too short to test. Father submitted to at least six drug tests and believed he substantially completed his services. He was "clean" and had not continued to use drugs after the positive test. He also completed parenting classes, anger management, individual substance abuse counseling, a drug assessment, and a psychological evaluation. Although he substantially completed most of the services, he nevertheless took the advice of counsel and entered the MSA because he was told if he lost in the trial court, he would lose all rights, but he "was aware [he] would at least get visitation, so [he] took that."

The trial court denied Father's motion to set aside the MSA. And, finding clear and convincing evidence that Father committed conduct defined in section 161.001(b)(1)(O) and termination was in the children's best interests, the trial court entered a decree of termination, adopting and incorporating the MSA as the binding order of the court and terminating Father's parental rights to the children.

### APPLICABLE LAW

The Texas Family Code authorizes a trial court to refer a suit affecting the parent-child relationship to mediation. *See* FAM. § 153.0071(c). A MSA is binding on the parties if it: (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that it is not subject to revocation; (2) is signed by each party to the agreement; and

–4–

(3) is signed by each party's attorney, if any, who is present at the time the agreement is signed. FAM. § 153.0071(d). Subject to one exception not applicable here,[2] section 153.0071 provides a party is entitled to judgment on a MSA that satisfies these statutory requirements notwithstanding Texas Rule of Civil Procedure 11 or another rule of law. *Id*. § 153.0071(e). Some Texas courts of appeals, however, have held a trial court need not enforce a MSA if it is illegal or was procured by fraud, duress, coercion, or other dishonest means.[3] *See In Interest of K.D.*, 471 S.W.3d 147, 161 (Tex. App.—Texarkana 2015, no pet.). We review a trial court's decision not to set aside a MSA for abuse of discretion. *In re C.H.*, 298 S.W.3d 800, 804 (Tex. App.—Dallas 2009, no pet.). A trial court abuses its discretion if it acts unreasonably or in an arbitrary manner, without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.3d 238, 241–42 (Tex. 1985).

An indigent parent has a statutory right to appointed counsel in a parental-rights termination case. FAM. § 107.013(a)(1); *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). The right "embodies the right to effective counsel." *In re M.S.*, 115 S.W.3d at 544. We evaluate an ineffective assistance of counsel claim under the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id*. at 544–45. A parent claiming ineffective assistance must show both that counsel's performance was deficient and the deficient performance prejudiced the case. *Id*. at 545.

To determine if counsel's performance is deficient, we consider all of the circumstances surrounding a particular case and focus primarily on whether counsel performed in a reasonably effective manner. *Id*. (citing *Strickland*, 466 U.S. at 687); *see also In re H.R.M.*, 209 S.W.3d 105, 111 (Tex. 2006). "[C]ounsel's performance falls below acceptable levels of performance when

---

[2] Section 153.0071 authorizes a trial court to decline to render judgment on a MSA if the trial court finds a party to the MSA was a victim of family violence, that circumstance impaired the party's ability to make decisions, and the MSA is not in the best interest of the child or children. *Id*. § 153.0071(e-1). Father does not assert this exception applies, and there are no allegations or evidence of family violence in the record.

[3] The Texas Supreme Court has yet to address this issue. *See In Interest of A.C.*, 560 S.W.3d 624, 635 & n.55 (Tex. 2018).

the 'representation is so grossly deficient as to render proceedings fundamentally unfair.'" *In re M.S.*, 115 S.W.3d at 545 (quoting *Brewer v. State*, 649 S.W.2d 628, 630 (Tex. Crim. App. 1983)). We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* Conduct constitutes ineffective assistance of counsel only if it is "so outrageous that no competent attorney would have engaged in it." *Id.*

To show counsel's performance prejudiced a parent's case, the parent must show a reasonable probability that, but for counsel's error, the "result of the proceeding would have been different." *In re M.S.*, 115 S.W.3d at 550. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome of the proceeding." *P.W. v. Dep't of Family & Protective Servs.*, 403 S.W.3d 471, 476 (Tex. App.—Houston [1st Dist.] 2013, pet. dism'd w.o.j.).

The record must affirmatively support a claim that trial counsel provided ineffective assistance. *In re L.G.R.*, 498 S.W.3d 195, 209 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). When the record is silent as to the reasons for trial counsel's actions, we may not engage in speculation to find ineffective assistance of counsel. *P.W.*, 403 S.W.3d at 476.

ANALYSIS

In his first issue, Father contends he received ineffective assistance of counsel. He asserts he relied on his attorney's advice to enter into the MSA but the post-termination visitation provided for in the MSA is not enforceable under any statute or case law. Nor can Father enforce the visitation against the grandfathers because they were not parties to the MSA. In his second issue, Father contends the trial court abused its discretion in denying his motion to set aside the MSA because the MSA is unenforceable "for all the same reasons listed in" his first issue.

Father does not dispute that the MSA met each of the statutory requirements of section 153.0071, and our review confirms that it did. *See* FAM. § 153.0071(d). Nor does he argue the MSA is illegal or was procured by fraud, duress, coercion, or other dishonest means. Although he

–6–

testified the MSA "materially misrepresented" his visitation rights, we disagree. Paragraph 13 of the MSA provides as follows:

> [Father] agreed that his parental rights to each of the subject children shall be terminated based on "O" grounds under section 161 of the TFC and best interest. The parties further agree that if the subject children are placed with either [maternal grandfather] or [paternal grandfather], [Father] shall still be entitled to visitation at times and places that are as arranged and agreed to between [father] and the managing conservator, but at least on a quarterly basis. All such visits shall be supervised and shall be at a visitation facility such as Hannah's House, with all expense to be paid by [Father].

Paragraph 13 unambiguously provides Father would be entitled to continued visitation if the children were placed with either the maternal or paternal grandparent; neither it nor any other provision in the MSA provides for any visitation in the event the children were not placed with either grandfather. *See Milner v. Milner*, 361 S.W.3d 615, 619 (Tex. 2012) (if MSA's language can be given a certain and definite meaning, the agreement is not ambiguous, and the contract's construction is a matter for the court).

Father testified he did not read the MSA before signing it and his attorney "explained" it to him. Father further testified as to his understanding that he would have visitation "under any scenario." He did not testify (or even allege), however, that his attorney, or anyone else, misrepresented the MSA's terms or the law to him. Nor can Father show the MSA's visitation provision is unenforceable because he never tried – indeed never had the opportunity – to enforce the provision because placement with both grandfathers was denied. *See In re C.H.C.*, 396 S.W.3d 33, 47–48 (Tex. App.—Dallas 2013, no pet.). Father's unilateral misunderstanding or mistake about the MSA's terms or enforceability is not grounds for setting aside the MSA. *See, e.g., In re C.H.C.*, 396 S.W.3d at 43–44. Accordingly, we conclude the trial court did not abuse its discretion in not setting aside the MSA. We overrule Father's second issue.

Nor does the record support Father's assertion that he was denied effective assistance of counsel. As discussed above, Father testified only that his attorney explained the MSA to him and

he relied upon his attorney's advice in signing the MSA. We do not know what specific advice, if any, his attorney provided about either the conditional visitation provision or its enforceability. Nor does Father point to any evidence to demonstrate entering into the MSA was not consistent with a reasonable litigation strategy under the circumstances. Considering Father failed to comply with court-ordered provisions necessary to obtain return of the children, his attorney reasonably could have determined proceeding to trial without the MSA was likely to result in termination of Father's parental rights without any visitation, but the MSA provided a possibility Father could continue visitations if the children were placed with one of the grandfathers. When the record is silent regarding counsel's reasons for an action, we may not speculate to determine whether counsel was ineffective. *See, e.g., Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 623 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Accordingly, we conclude Father has not carried his burden to demonstrate his attorney's conduct fell outside the wide range of reasonable professional assistance.

Father also fails to satisfy the second prong of the *Strickland* test – that his attorney's deficient performance prejudiced his defense. *See In re M.S.*, 115 S.W.3d at 545. Father's brief asserts his attorney rendered ineffective assistance of counsel in allowing Father to sign the MSA, but he does not show, or even assert, that he was prejudiced.

At the final hearing, the trial court heard Warren's testimony that Father completed some of the "critical services necessary to obtain reunification" with the children, but did not comply with all of the services, including the "drug testing component." Father tested positive on one drug test and failed to appear for numerous tests. Due to his "significant drug history," his failure to complete drug testing was a significant issue. Warren believed it would serve the best interest of the children if the trial court provided final relief so the children could be adopted. Father acknowledged he tested positive for methamphetamine on a hair strand drug test and did not submit

to drug tests when asked by the Department. On this record, the trial court could find clear and convincing evidence that Father committed conduct defined in section 161.001(b)(1)(O) and termination was in the children's best interests. *See* FAM. § 161.001(b)(1)(O), (b)(2). Accordingly, Father cannot show the result of the termination proceeding would have been different had he not entered into the MSA based on his attorney's advice to do so. Because Father has not met his burden under either prong of the *Strickland* test, we overrule his first issue.

We affirm the trial court's decree of termination.

/Ada Brown/
ADA BROWN
JUSTICE

190324F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF B.H., ET AL., CHILDREN

No. 05-19-00324-CV

On Appeal from the 305th Judicial District Court, Dallas County, Texas
Trial Court Cause No. JC-16-00779-X.
Opinion delivered by Justice Brown; Justices Schenck and Pedersen, III participating.

In accordance with this Court's opinion of this date, the trial court's decree of termination is **AFFIRMED**.

Judgment entered this 9th day of September, 2019.