# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00770-CV

**D. T., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 297,433-B, HONORABLE CHARLES H. VAN ORDEN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

D.T., herein "Darlene," appeals the trial court's decree terminating her parental rights to her son "Casey," who was nine years old at the time of the bench trial.[1] Darlene contends that the evidence was legally and factually insufficient to support the trial court's findings that (1) she failed to comply with a court order that specifically established the actions necessary for her to obtain the return of Casey, who the Texas Department of Family and Protective Services had removed from her care for abuse or neglect; (2) she constructively abandoned Casey; and (3) termination was in Casey's best interest. *See* Tex. Fam. Code § 161.001(b)(1)(N), (O), (2). Darlene also contends that she received ineffective assistance of counsel. We will affirm the trial court's decree.

---

[1] We will refer to the child and other family members involved in this case by pseudonyms. *See* Tex. R. App. P. 9.8.

## BACKGROUND

The Department removed Casey from Darlene's care December 27, 2017, and filed a petition for parental rights' termination and/or managing conservatorship of the child. The Department attached to its petition the affidavit of CPS investigator Bethany Brunson, who averred that Darlene "fails to provide a safe, non-chaotic and drug free environment for her child. [She] places her own needs of illegal drug use and a domestic violence relationship with her girlfriend [Samaros] . . . above that of her son's well-being [and] . . . chooses an unhealthy relationship with [] Samaros, allowing [her] back into the home even with a protective order, placing [Casey] at risk." Brunson's affidavit stated that during transportation to the CPS office, "[Casey] reported [that] in the past month [] Samaros has thrown noodles and broken a window because she was mad." The affidavit continued: "During a home assessment on December 27 . . . [Darlene] was provided an instant oral swab, testing positive for methamphetamine and amphetamine," and "[Darlene had been] using methamphetamines every day and is now down to twice a week smoking methamphetamines away from her home; typically leaving [Casey] at home then returning to the home still under the influence." Brunson's affidavit set forth the criminal history of Darlene— including numerous misdemeanor and felony arrests for drug use and violence—and of Samaros— two misdemeanor convictions including assault causing bodily injury on a family member.

The next day, the trial court issued an "Order for Protection of a Child in an Emergency," appointing the Department as the temporary managing conservator of Casey. After a hearing on January 23, 2018—at which Darlene did not appear—the court signed a temporary order, finding that "there is a danger to the physical health or safety of the child caused by the acts

2

or failure to act of [Darlene] and therefore parental possession of the child is not in the best interest of the child." The order also abated Darlene's visitation "until further order of the Court."

In February the court signed temporary orders approving the Department's family service plans, permanency plans, and permanency progress reports filed with the court. Thereafter, Darlene executed and filed with the court a sworn waiver of citation stating, "I agree that the [Department's] petition may be amended and that the cause may be taken up and considered by the Court without further notice to me." She also waived her rights to a jury trial and to 45-days' notice of the final hearing.

In March, the Department filed with the court a status report and family service plan outlining various tasks and services for Darlene to complete. The report noted, "[t]he family needs assistance in developing relationships and/or communication. Family members are known, but currently none are able to provide emotional or concrete support. . . . [Darlene] relies on her paramour, [] Samaros, for support; however they have a violent relationship." The report noted that Darlene was aware of the requirement that she submit to random drug testing, but from January 25 to February 27 she did not show up for any of the six required drug tests that were accordingly documented as "positive."[2] The report noted that the Department had not been able to locate Darlene's father, whom she had identified as a potential placement for Casey, and that "[Casey] has stated that he does not want to live with [Darlene's father] as he 'snorts white stuff.'"

The Department filed a permanency report with the court in May representing that the Department's permanency goal was "unrelated adoption" and its concurrent permanency

---

[2] The family service plan informed Darlene, "Failure to test on the assigned . . . day will be considered a positive test for visitation purposes."

3

goal was "relative/fictive kin adoption." The report noted that neither of the two possible relative placements identified by Darlene—Casey's maternal grandfather and maternal aunt—had made contact with the Department. The report noted that Casey enjoys living with his foster parents and "would like to be adopted by them, but still maintain a relationship with his mother."

Darlene did not appear but was represented by court-appointed counsel at a June permanency hearing, after which the court signed a "Permanency Hearing Order" finding that Darlene is not "willing and able to provide the child with a safe environment and . . . return of the child to a parent or other person or entity is not in the child's best interest." The order approved the Department's permanency plans, recited that Darlene's visitation "continue to be abated until further order of the Court," and granted a temporary injunction enjoining Darlene from coming within 100 yards of Casey's residence or school.

In September, the Department filed a final report with the court in which CPS investigator Elaine Mata represented that Darlene "has not been in contact with the Department" and is "unable to mitigate concerns by providing a safe, stable environment nor is she able to identify or acknowledge that domestic violence is a danger to her child." Mata's report also stated that "[Darlene] has admitted she was using methamphetamines daily, but [was] able to 'sober up' to pass prior drug screens with the Department." The report indicated that the Department's permanency goal was "unrelated adoption" with no concurrent goal.

The bench trial occurred in October. Darlene did not attend, but her court-appointed counsel appeared. The Department called investigator Mata to testify and admitted four documents into evidence without objection: the Brunson removal affidavit, two family service plans, and the Department's final report. The court took judicial notice of its file. Casey's attorney ad litem and

4

guardian ad litem each represented to the court that they believed termination was in Casey's best interest. The trial court found by clear and convincing evidence that (1) Darlene had constructively abandoned Casey, (2) Darlene had failed to comply with the provisions of a court order specifically establishing the actions necessary for her to obtain Casey's return, and (3) termination of Darlene's parental rights was in Casey's best interest. *See* Tex. Fam. Code § 161.001(b)(1)(N), (O), (2).

## DISCUSSION

In her first three issues, Darlene challenges the legal and factual sufficiency of the evidence supporting termination. To terminate the parent-child relationship, the Family Code requires the factfinder to find by clear and convincing evidence that (1) the parent has engaged in conduct set out as statutory grounds for termination and (2) termination is in the child's best interest. *Id.* § 161.001(b)(1), (2); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). When reviewing the legal sufficiency of the evidence in a termination case, we consider all the evidence in the light most favorable to the trial court's finding and determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). This includes assuming that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so and disregarding all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* When reviewing the factual sufficiency of the evidence, we view all of the evidence in a neutral light and determine whether a reasonable factfinder could have formed a firm belief or conviction that a given finding was true. *See C.H.*, 89 S.W.3d at 18–19. We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable person could do so, and we disregard evidence that a reasonable factfinder could have

5

disbelieved or found incredible. *See J.F.C.*, 96 S.W.3d at 266. Evidence is factually insufficient only if a reasonable factfinder could not have resolved the disputed evidence in favor of its finding and if that disputed evidence is so significant that the factfinder could not reasonably have formed a firm belief or conviction that its finding was true. *Id.*

***Subsection (O) finding***

In her first issue, Darlene contends that the evidence is insufficient to support the trial court's finding that she "failed to comply with the provisions of a court order that specifically established the actions necessary for [her] to obtain the return of [Casey] who has been in the permanent or temporary managing conservatorship of the Department . . . for not less than nine months as a result of [Casey's] removal from [her] under Chapter 262 for the abuse or neglect of [Casey]." *See* Tex. Fam. Code § 161.001(b)(1)(O). Darlene does not dispute that Casey was in the Department's custody for at least nine months or that she did not comply with the trial court's order requiring her to complete the requirements identified in the family service plan. Rather, she argues that the Department did not meet its burden of proof by showing that Casey was removed as a result of abuse or neglect. *See id.*; *In re E.C.R.*, 402 S.W.3d 239, 248–49 (Tex. 2013) (concluding that evidence established that child was removed from parent under Chapter 262 for "abuse or neglect" as required by subsection (O)).

The supreme court has determined that while subsection (O) requires proof of abuse or neglect, those terms include not only specific allegations of abuse or neglect but also the risk of abuse or neglect, consistent with the Family Code's use of those terms in the removal standards outlined in Chapter 262. *See E.C.R.*, 402 S.W.3d at 246–48 ("'[A]buse or neglect of the child' [as

6

used in subsection (O)] necessarily includes the risks or threats of the environment in which the child is placed. . . . If a parent has neglected, sexually abused, or otherwise endangered her child's physical health or safety, such that initial and continued removal are appropriate, the child has been 'remov[ed] from the parent under Chapter 262 for the abuse or neglect of the child.'"); *see also E.W. v. Texas Dep't of Family & Protective Servs.*, No. 03-17-00572-CV, 2017 WL 5985505, at *4–5 (Tex. App.—Austin Dec. 1, 2017, no pet.) (mem. op.) (concluding that parent's illegal drug use was evidence of endangerment to children and sufficient to support finding that children were removed for neglect); *In re J.S.G.*, No. 14-08-00754-CV, 2009 WL 1311986, at *6–7 (Tex. App.—Houston [14th Dist.] May 7, 2009, no pet.) (mem. op.) (relying on caseworker's affidavit in support of Department's removal request, as well as trial court's temporary orders concluding that children faced danger to their physical health or safety and substantial risk of continuing danger if returned home, to conclude that evidence established that children were removed "as a result of neglect"); *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (considering affidavit in support of removal and trial court's temporary orders finding "continuing danger to the physical health or safety of the child if returned to the parent" as evidence that child was removed because of neglect).

Here, the record shows that Darlene was under the influence of methamphetamine and amphetamine on the date of the Department's home assessment; admitted to using methamphetamine twice a week, during which times she left Casey at home and later returned still under the influence of the illegal drug; allowed her abusive girlfriend into the home in frustration of a protective order; and engaged in hostile verbal attacks with her girlfriend, who had broken a window in anger, in the presence of Casey. The trial court subsequently issued temporary orders

7

finding that there was "a danger to the physical health or safety" of Casey caused by Darlene's acts or failure to act, Darlene was neither willing nor able to provide the child a safe environment, and it was not in the child's best interest to be returned to her.

Viewing the evidence in the light most favorable to the subsection (O) finding, we conclude that the trial court could reasonably have formed a firm belief or conviction that Darlene's drug-related conduct and violent relationship with her girlfriend created an environment that endangered Casey's physical health or safety and that he was, therefore, removed for abuse or neglect. *See E.C.R.*, 402 S.W.3d at 246–48; *J.F.C.*, 96 S.W.3d at 266. Additionally, we have found no disputed evidence in the record on this issue that would lead to a different conclusion. *See J.F.C.*, 96 S.W.3d at 266. Accordingly, the evidence is legally and factually sufficient to support the trial court's finding that Casey was removed under Chapter 262 for abuse or neglect. *See* Tex. Fam. Code § 161.001(b)(1)(O).

Because we conclude that the evidence is factually and legally sufficient to support the trial court's finding under subsection (O), we need not address Darlene's second issue contesting the evidentiary sufficiency of the court's finding under subsection (N). *See id.* § 161.001(b)(1)(N); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 221 (Tex. App.—Austin 2013, no pet.) ("Only one statutory ground is necessary to support a judgment in a parental-rights-termination case.").

### *Best-interest finding*

We next consider Darlene's complaint that the evidence is insufficient to support the trial court's best-interest finding. *See* Tex. Fam. Code § 161.001(b)(2). A factfinder's best-interest

8

determination is reviewed in light of the non-exhaustive list of considerations set out in *Holley v. Adams*: the child's wishes, if the child is of an appropriate age to express such wishes; the child's present and future emotional and physical needs; present and future emotional and physical danger to the child; the parenting abilities of the individuals seeking custody; programs available to assist those people to promote the child's best interest; plans for the child by the people or agency seeking custody; the stability of the home or proposed placement; the parent's acts or omissions that may indicate that the parent-child relationship is improper; and any excuse for the parent's acts or omissions. 544 S.W.2d 367, 371–72 (Tex. 1976).

The State is not required to prove all of the *Holley* factors "as a condition precedent to parental termination," and a lack of evidence of some of the factors does not "preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *C.H.*, 89 S.W.3d at 27. Evidence presented to satisfy a predicate statutory-ground finding may also be probative of the child's best interest. *Id.* at 28.

We summarize only those *Holley* factors on which there is relevant evidence in the record. As for Casey's desires, the Department's final report indicated that he would like to continue living with his foster parents and is happy there but also "very much" wants to have ongoing contact with Darlene. The evidence indicates that Casey does not have any special present or future emotional or physical needs. These factors together are either of neutral weight or weigh slightly against termination.

9

As for present and future emotional and physical danger to Casey, there is evidence that Darlene was using illegal drugs throughout the pendency of this case, indicated by the myriad (over thirty) drug tests that she missed and that were presumed, therefore, to be positive. Evidence existed that Darlene had threatened the previous caseworker, was a self-admitted "dope dealer," had access to guns and weapons, had used cocaine during the case's pendency, had not completed domestic-violence classes, was engaged in a violent relationship with her girlfriend, and had been arrested for theft and family-violence assault while this case was pending. Casey was removed from Darlene's care because she admitted to frequently returning home to care for her son while still under the influence of illegal drugs and because she allowed her violent girlfriend to be in her home and engage in hostile behaviors in the child's presence. Darlene did not appear at trial and was not able to testify on her own behalf to explain any of these circumstances or failings or to demonstrate that she is able to provide a safe environment for Casey going forward. No witnesses testified to the type of environment that Darlene can provide her child. This factor weighs heavily in favor of termination.

Minimal evidence related to the plans of those persons seeking custody, the programs available to assist such persons, and the stability of the proposed placements. CPS investigator Mata testified that the foster parents would like to adopt Casey, who is happy and doing well in their home. The Department's final report indicated that Casey is doing well in therapy sessions regarding controlling his impulsive behaviors at school and that the foster home is a safe environment that meets his basic needs. It further indicated that Casey's placement allows him to participate in soccer at the local YMCA and socialize with peers in his community. Mata testified that she has had no

contact with Darlene, whose last court appearance was seven months before trial, despite the family service plan's requirement that Darlene maintain contact with the Department. Mata testified that Darlene had not sent her any gifts or letters to give to Casey.

The Department's final report indicated that Darlene had been evicted from her home in May and planned to move to a homeless shelter and that her current whereabouts were unknown. The Department's family service plan, as approved by the court, listed various resources and programs available to Darlene to improve her ability to provide Casey with a safe and stable environment, and the evidence supports the conclusion that she did not take advantage of any programs and services throughout the pendency of the case or provide any excuse for her failure to do so. Furthermore, the evidence shows that of the twelve requirements Darlene was ordered to complete, she had completed only one by the time of trial—providing the Department with a copy of Casey's birth certificate and social security card. The outstanding requirements included: providing proof of employment or community service, proving attendance at a domestic-violence support group, attending a drug and alcohol assessment and following attendant recommendations, completing a psychological evaluation, attending individual therapy sessions and court hearings, and submitting to random drug testing. These factors, plus Darlene's lack of progress towards meeting even some of these requirements despite facing termination of her parental rights, weigh heavily in favor of termination.

Considering this evidence in the light most favorable to the trial court's best-interest finding, we conclude that the trial court could reasonably have formed a firm belief or conviction that termination of Darlene's parental rights was in Casey's best interest. *See J.F.C.*, 96 S.W.3d

11

at 266. Furthermore, there was no significant disputed evidence that would render such finding unreasonable. *See id.* The evidence was legally and factually sufficient to support the trial court's best-interest finding, and we accordingly overrule Darlene's third issue.

### Ineffective assistance of counsel

In her final issue, Darlene contends that she received ineffective assistance from her trial counsel, who "did not file any responsive pleadings, did not request discovery from Petitioner, did not cross examine witnesses at trial, made no objections to any evidence at trial, and presented no evidence in support of the respondent's case." She claims that the record is "devoid of any effort by trial counsel," who performed "no function" for Darlene, and that the trial, therefore, was "tantamount to a default hearing."

Proving ineffective assistance of counsel requires showing: (1) commission of errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment, and (2) that counsel's deficient performance prejudiced the defense—i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *In re M.S.*, 115 S.W.3d 534, 545 (Tex. 2003) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). We must determine "whether counsel's defective performance caused harm; in other words, whether 'there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different.'" *M.S.*, 115 S.W.3d at 549–50 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). "Thus, an ineffective assistance of counsel claim requires a showing of a deficient performance by counsel so serious as to deny the defendant a fair and reliable trial." *In re J.O.A.*, 283 S.W.3d 336, 342 (Tex. 2009). An assertion of ineffective

12

assistance will be sustained only if the record affirmatively supports such a claim. *Lockwood v. Texas Dep't of Family & Protective Servs.*, No. 03-12-00062-CV, 2012 WL 2383781, at *5 (Tex. App.—Austin June 26, 2012, no pet.) (mem. op.).

Taking into account all of the circumstances surrounding the case—particularly Darlene's non-appearance at trial and resultant inability to testify on her own behalf or confer with her trial counsel—we cannot conclude that there is any reasonable possibility that the result would have been different had Darlene's trial counsel performed the "functions" that Darlene contends she failed to perform. Darlene does not identify any specific "responsive pleadings" that her trial counsel should have filed but did not or any specific evidentiary objections that her counsel should have made but did not. Darlene does not identify any specific evidence that her counsel should have sought to admit or any witnesses she should have called to testify and what their testimony may have been. While the record shows that Darlene's trial counsel did not cross-examine the Department's witness, it is unlikely that cross-examination would have had any effect on the result, as properly admitted documentary evidence amply supported the trial court's findings.

On this record, we cannot conclude that Darlene's trial counsel's performance fell outside the wide range of reasonable professional assistance or was "so grossly deficient as to render [the] proceedings fundamentally unfair." *See M.S.*, 115 S.W.3d at 545 (quoting *Brewer v. State*, 649 S.W.2d 628, 630 (Tex. Crim. App. 1983)); *see also Strickland*, 466 U.S. at 669 ("A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). This is especially true considering that Darlene did not attend trial and other prior hearings; presumably, Darlene's counsel was limited in her strategic options,

13

not being able to call Darlene as a witness to rebut the Department's evidence or confer with her. As discussed above, the evidence was legally and factually sufficient to support the trial court's termination findings. Furthermore, the trial court could have inferred that Darlene's past conduct endangering the well-being of Casey would recur in the future if he were returned to her, and Darlene was not present to provide testimony countering that inference. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("[A] fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent."). Accordingly, we overrule Darlene's fourth issue.

## CONCLUSION

We affirm the trial court's decree terminating Darlene's parental rights.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed: April 9, 2019

14