In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-24-00089-CV
IN THE INTEREST OF K.D.R., K.D.R., AND K.C.R.

On Appeal from the County Court at Law
Polk County, Texas
Trial Cause No. CIV22-0596

## MEMORANDUM OPINION

Mother[1] appeals the trial court's order terminating her parental rights to her three children, K.D.R. ("Kim"), K.D.R. ("Kendra"), and K.C.R. ("Kevin"). In three issues, Mother complains about the ineffective assistance of her court-appointed trial counsel and challenges the legal and factual sufficiency of the evidence supporting the best-interest finding and the trial court's appointment of the Department of Family and Protective Services ("the Department") as permanent managing

_____

[1] To preserve the privacy of the parties, we refer to the parties and the children by pseudonyms or their familial relationship. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

conservator of the children. *See* Tex. Fam. Code Ann. §§ 161.001(b)(2); 161.207. We affirm the trial court's Order of Termination.

## BACKGROUND

In September 2022, the Department filed a petition seeking the termination of Mother's and Father's parental rights to their children, Kim, Kendra, and Kevin. The Department included Maddison Peters's Affidavit in Support of Removal. Peters, a Department Investigator, states in her Affidavit that the Department received an intake in September 2022, stating that the oldest child, Kim, made an outcry to a family member that Father had sexually abused her since she was three years old, and that both Father and Mother had physically abused her. Kim also disclosed that Father inappropriately disciplined Kim and hit her with a belt when he was upset, and that Father had punched her in the face before with both an open and closed fist. According to the Affidavit, Kim lived with her maternal grandparents and two younger siblings, Kendra and Kevin, and Mother and Father lived in a separate home on the same property. Peters stated that the children were forensically interviewed, and Kim disclosed the sexual abuse continued until she was twelve years old. Kim reported that her maternal grandmother witnessed Father sexually abusing her and threatened to call the police if she caught him again. Kim reported that Mother choked her and tried to strike her with a vehicle. Kim also stated her parents had violent and physical arguments about "dope."

2

Peters further explained in her Affidavit that Mother claimed she did not know about the abuse and that Kim wanted to be removed to have a better life. Peters stated that Mother admitted leaving the children with the maternal grandparents despite knowing the grandparents had substance abuse issues and had tested positive for drugs during past cases with the Department. According to Peters, after the forensic interview of Kim, Mother agreed to submit to a drug test but stated she would test positive for methamphetamines.

Peters's Affidavit described Mother's history with the Department, which began in December 2018 and included allegations of neglectful supervision, physical neglect, and medical neglect. The Department found "Reason to Believe[]" concerning the medical neglect allegation, finding the family failed to attend the medical procedure for Kendra's teeth, which were severely decayed. The past allegations against Mother included complaints about Mother, Father, and the maternal grandparents using methamphetamines and about the children being filthy, having rotten teeth, and not having running water. Peters's Affidavit outlined Mother and Father's criminal records, which included one criminal offense by Mother for public lewdness and thirteen criminal convictions as to Father dating from 1981-2012, including convictions for a sex offense against a child, indecency with a child, public lewdness, burglary of a vehicle, fraud, and theft.

Peters's Affidavit concluded that Mother knowingly and willingly placed the children in an unsafe environment with caregivers who have substance abuse issues, and she displayed a lack of protectiveness as she doubted the validity of her child's ongoing sexual abuse outcry. The Department requested Temporary Managing Conservatorship of the children to ensure their immediate and future safety and well-being, and the trial court issued an Order for Protection of a Child in an Emergency.

In September and December 2023, the trial court conducted a bench trial on the Department's petition. Peters testified that she investigated Kim's sexual abuse allegations against Father. Peters testified that Mother did not believe Kim's allegation but wanted the best for her child. Peters testified that Kim also alleged that Mother physically abused her by choking her until she could not breathe and trying to run over her with a car. Peters explained that Kim reported her parents used "dope" and that she saw Mother exchange money for white powder, and after the children were removed, Mother admitted using methamphetamines. Peters testified that a prior Department investigation of the parents showed that the family was staying at the maternal grandparents' house and had to leave because the grandparents tested positive for methamphetamines. The Department also made a finding against the parents for medical neglect.

Peters testified that the children were interviewed at Childrenz Haven and, based on Kim's allegations, the Department sought immediate removal and

temporary managing conservatorship of the children, and the children were placed together in a group home because there were no relative placements. When the children were removed, Kim was fourteen, Kendra was nine, and Kevin was seven. Peters believed that there was a continuing danger to the children if they remained in their home and that it was in their best interest to be placed in foster care. Peters explained that the children were significantly behind academically, and her first impression was that they appeared "unkempt," had dirty hair and clothes, and an unclean scent. After their removal, the case was transferred to the conservatorship department.

Keflyn Wilridge, a Department Caseworker, testified that she spoke with Mother, who was still living with Father, and the Department was concerned the parents were still together due to Kim's allegations of sexual abuse against Father. Wilridge testified that Kim did not want to return to her parents' home, and Wilridge had not visited the home because of the Department's concerns. Wilridge reviewed the family plans of service with the parents, who did not show up for drug screenings, and she explained Mother had sobriety issues and went to inpatient care but relapsed, used methamphetamine, and was arrested. Wilridge explained Mother was required to maintain safe and stable housing and complete an ADAC assessment, random drug screenings, a psychological assessment, and individual counseling. Wilridge testified that Mother was applying for disability benefits, but Wilridge did not know

the nature of her disability. Wilridge explained Mother completed a parenting class and the ADAC and psychological assessments, but Mother failed to follow the recommendations of those assessments, including completing inpatient treatment. Mother failed to submit to random drug screenings, enroll in individual counseling, and maintain contact with the Department. Wilridge testified that Father also failed to complete his services.

Wilridge did not recommend returning the children to the parents. Wilridge testified that Kendra and Kevin were doing well in their current placement, but Kim was trying to harm herself and had a new counselor. Wilridge testified that the children's placement provided weekly therapy, a local school, transportation, medical care, and dental care. Wilridge explained the children's education had been neglected, but they were getting caught up academically and doing well in school.

Wilridge testified that Mother allowed the children to remain in an environment that was harmful to the children's physical and emotional well-being, engaged in actions that were harmful to the children's emotional and physical well-being, and that the children would be in continuing danger if they were returned to Mother. Wilridge believed that Mother continues to have substance abuse issues. Wilridge explained the Department recommended terminating parental rights, appointing the Department as Permanent Managing Conservator, and finding a foster home for all three children to have permanency. Wilridge believed termination

was in the children's best interest. Wilridge agreed that due to their age, it was hard finding one placement for the children, and she explained that at times, Kim did not want to see Kevin because she alleged that Father had incorporated Kevin into the sexual abuse. Wilridge testified that Kim also alleged that Mother participated in the sexual abuse. Wilridge explained that Kim and Kendra had some virtual visits with Mother, but Kevin did not want any contact with his parents. Wilridge also explained that Kendra and Kevin were open to being placed with an adoptive family and had told Mother they would not live with her again, but Kim wanted to age out of the system to receive educational opportunities.

Emily Pillows, the Department Supervisor, testified about the investigation concerning the allegations against the parents, and she explained that the initial Investigator's findings were made before the Department became involved and those findings did not end the Department's civil case against the parents. Pillows explained that the investigation was closed, the children were removed, and the Department took over the conservatorship portion of the case. Pillows testified that the parents completed a psychological assessment, and to her knowledge, neither had a diminished intellectual capacity. Pillows testified that the Department requested termination because it was in the children's best interest.

Kaycee Hendrix, the forensic interviewer with Childrenz Haven, testified that she conducted a forensic interview of the children, and Mother was with the children

7

before and after the interview. Hendrix testified that Kim made outcries of sexual and physical abuse. Hendrix explained that Kim reported Father had sexually abused her from the age of three to the age of twelve, and she remembered the age of three because grandmother caught Father performing acts on her. Specifically, Kim stated that Father "stuck his fingers inside of her lower area[,]" which she confirmed was "used for going to the restroom[,]" and that the abuse occurred while she was in the shower, her room, and her Mother's room. Hendrix stated that Kim reported that her parents used drugs, and Father physically abused her, Mother, and Kendra. Kim also reported that Mother choked her multiple times until she could not breathe and tried to run her over twice with a car.

Hendrix testified that Kendra and Kevin did not make any outcries or disclose any physical abuse, sexual abuse, or drug use. Hendrix explained it is not uncommon for children not to make outcries during the interview, and the presence of a parent or perpetrator could impact the interview.

Terri Sarver, the CASA advocate, testified that Kim has emotional problems and did not feel safe returning home. Sarver testified that Kim likes her placement, which is addressing her educational needs to catch up in school, and she is doing well overall. Sarver explained that Kim was going to therapy twice per week to deal with her self-harm issues. Sarver testified that Kim told Mother she never wanted to

8

live with her again. Kim is bonded with Kendra and Kevin and visits them regularly. Sarver believed it was in Kim's best interest for parental rights to be terminated.

Sarver testified that Kendra was a fun-loving girl with minor behavioral issues. Kendra was also behind in school and was getting accommodations. Kendra told Mother that she did not want to return home, and she wanted to be placed in a foster home and be adopted. Sarver explained that Kim and Kendra shared a room at their current placement. Sarver described Kevin as a cute kid who was behind in school but was doing "fairly well." Sarver testified that Kevin is not interested in visiting with his parents but wants to be with his sisters. Sarver explained the children did not want to return home because of safety concerns, and she believed that termination of parental rights was in the best interest of the children's emotional well-being. Sarver testified the children should stay in their current placement, which was safe and stable and providing the services they needed. Sarver believed that Kendra and Kevin should be placed in an adoptive home together, and Kim should remain in contact with them and receive the Department's "aging-out services[.]"

The State called Mother and Father to testify, but they invoked their Fifth Amendment right not to testify.

The trial court found that clear and convincing evidence supported three predicate statutory grounds for terminating Mother's parental rights and that

termination of Mother's parental rights was in the best interest of Kim, Kendra, and Kevin. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (O), (2). Specifically, the trial court found that Mother: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Mother to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parent under Chapter 262 for abuse or neglect of the children. *See id.* § 161.001(b)(1)(D), (E), (O). The trial court appointed the Department as the permanent managing conservator of the children. The trial court issued Findings of Fact and Conclusions of Law. Mother appealed.

## ANALYSIS

Ineffective Assistance of Counsel

In issue one, Mother argues her court-appointed trial counsel provided ineffective assistance. Specifically, Mother argues her trial counsel was ineffective in failing to object to "numerous inadmissible statements during testimony[]" to support the termination grounds, including inadmissible hearsay and expert

10

testimony by a lay witness, non-responsiveness, and testimony based on speculation and lack of personal knowledge. Mother complains that trial counsel's ineffective assistance caused an improper result.

A parent who cannot afford to retain counsel in Texas parental-termination cases has a right to an appointed attorney who provides effective assistance. *In re D.T.*, 625 S.W.3d 62, 69-70 (Tex. 2021); *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003); *see also* Tex. Fam. Code Ann. § 107.013(a). Ineffective-assistance-of-counsel claims in parental-termination cases, as in criminal cases, are governed by the United States Supreme Court's two-prong test articulated in *Strickland v. Washington*. *In re M.S.*, 115 S.W.3d at 544-45 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). First, the parent must show that counsel's performance was deficient. *Id.* at 545. This requires showing that counsel made errors so serious that counsel did not function as the "counsel" guaranteed by the Sixth Amendment. *Id.* Second, the parent must show that the deficient performance prejudiced the case. *Id.* This requires showing that counsel's errors were so serious as to deprive the party of a fair trial–a trial whose result is reliable. *Id.*

When examining counsel's performance under the first prong, "we must take into account all the circumstances surrounding the case, and must primarily focus on whether counsel performed in a 'reasonably effective' manner." *Id.* (quoting *Strickland*, 466 U.S. at 687). Counsel's performance falls below acceptable levels

only if the "'representation is so grossly deficient as to render proceedings fundamentally unfair[.]'" *Id.* (quoting *Brewer v. State*, 649 S.W.2d 628, 630 (Tex. Crim. App. 1983)). We give great deference to counsel's choices and indulge "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' including the possibility that counsel's actions are strategic." *Id.* (quoting *Strickland*, 466 U.S. at 689). The challenged conduct will constitute ineffective assistance only when "'the conduct was so outrageous that no competent attorney would have engaged in it[.]'" *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

In conducting the harm analysis under the second prong of *Strickland*, reviewing courts must determine whether there is a reasonable probability that, but for the deficient performance, the result of the proceeding would be different. *Id.* at 549-50. In this context, "[a] reasonable probability is sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, a parent must show that "counsel's 'deficient performance prejudiced the defense[.]'" *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *Strickland*, 466 U.S. at 687).

An allegation of ineffective assistance of counsel in a termination proceeding must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness and the resulting harm. *In re L.G.R.*, 498 S.W.3d 195, 209 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). We may not speculate and

12

find trial counsel ineffective when the record is silent regarding counsel's reasons for his actions. *In re Z.M.R.*, 562 S.W.3d 783, 794 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Mother bears the burden of demonstrating a reasonable probability that her parental rights would not have been terminated if not for her trial counsel's deficient conduct. *See In re V.V.*, 349 S.W.3d 548, 559-62 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (op. on reh'g en banc).

Appellant fails to cite to specific statements in the record that she claims constitute unobjected to inadmissible hearsay, unobjected to expert testimony by a lay witness, non-responsive answers to which there were no objections, and unobjected testimony based on speculation and lack of personal knowledge. Without specific citations to the record, we cannot speculate as to the admissibility or inadmissibility of any such statements in the context in which they were made. An appellant has a duty to show that the record supports her contentions and provide citations to the record. *See* Tex. R. App. P. 38.1(i); *and see J.W. Garrett & Sons, Inc. v. Snider*, No. 09-14-00306-CV, 2015 Tex. App. LEXIS 10201, at **12-13 (Tex. App.—Beaumont Oct. 1, 2015, pet. denied) (mem. op.) (additional citations omitted) (the failure to cite to relevant portions of the record waives appellate review).

Mother did not file a motion for new trial or present new testimony and affidavits–or any other evidence–about the basis for counsel's reasoning for not

objecting on the grounds she alleges. Because the record is silent as to the reasons for counsel's conduct, we may not speculate to find counsel's performance deficient. *See In re Z.M.R.*, 562 S.W.3d at 793-95; *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 623 (Tex. App.—Houston [1st Dist.] 2009, pet denied). Without evidence about strategic reasons for counsel's behavior, Mother fails to overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See In re M.S.*, 115 S.W.3d at 545; *see also Strickland*, 466 U.S. at 689.

There is substantial evidence in the record to support termination of Mother's parental rights under subsections (D), (E) and (O). Mother used drugs in the presence of the children. Mother allowed the Father, who was a convicted sex offender, to remain in the home and have contact with the child who had made an outcry of sexual contact by the Father. Mother allowed the children to remain for significant periods of time with maternal Grandparents who were also drug abusers. Mother allowed the children to remain in unsafe environments that contributed to the children's deficiencies in their education levels. Mother failed to submit to drug testing and drug treatment. Mother failed to follow the service plan by obtaining suitable housing and employment or income. Even if Mother had met *Strickland's* first prong, we conclude she failed to show that, but for counsel's alleged errors, the

14

result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694.

We overrule issue one.

Best Interest of the Children

In issue two, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding that terminating Mother's parental rights is in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2).

Under legal sufficiency review, we review all the evidence in the light most favorable to the finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id*. If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id*.

Under factual sufficiency review, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id*. We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id*. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its ruling. *Id*. If, in light of the entire

15

record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id*.

The decision to terminate parental rights must be supported by clear and convincing evidence, i.e., "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b); *see also In re J.L.*, 163 S.W.3d at 84. We will affirm a judgment if any ground is supported by legally and factually sufficient evidence and the best-interest finding is also supported by legally and factually sufficient evidence. *In re C.A.C. Jr.*, No. 09-10-00477-CV, 2011 WL 1744139, at *1 (Tex. App.—Beaumont May 5, 2011, no pet.) (mem. op.).

There is a strong presumption that the best interest of a child is served by keeping the child with the parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re C.M.C.*, 554 S.W.3d 164, 170 (Tex. App.—Beaumont 2018, no pet.); *see also* Tex. Fam. Code Ann. § 153.131(b). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a). The evidence addressing what is in the child's best interest

16

may include direct and circumstantial evidence, which may include subjective factors such as observations the factfinder makes about the parents when they appear in court. *See In re R.A.S.*, No. 09-20-00140-CV, 2020 Tex. App. LEXIS 8335, **5-6 (Tex. App.—Beaumont Oct. 22, 2020, no pet.) (mem. op.) Often, past conduct is relevant to the trial court's role in the case when it acts as the trier of fact in deciding whether terminating the relationship between the parent and the child is in the child's best interest. *Id.* at **4-5.

As to the best interest inquiry, we consider a non-exhaustive list of factors sometimes referred to as the *Holley factors*: (1) the desires of the child; (2) the child's emotional and physical needs now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the child's best interest; (6) plans for the child by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see also* Tex. Fam. Code Ann. § 263.307(b). No particular *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in a child's best interest. *In re R.A.S.*, 2020 Tex. App. LEXIS 8335, at **4-5. A parent's inability to provide a

stable home supports a finding that termination is in the best interest of the child. *In re T.J.*, No. 09-22-00224-CV, 2022 Tex. App. LEXIS 8963, at **9-10 (Tex. App.— Beaumont Dec. 8, 2022, pet. denied) (mem. op.).

The trial court heard evidence that the Department had concerns about the parents' home because Mother and Father were still living together despite Kim's allegations against Father. The trial court considered evidence that the parents failed to complete their services, and that Mother failed to follow the recommendations of her assessments and enroll in counseling, continued to have sobriety issues, and refused to submit to drug testing. The trial court heard that the Department was addressing the children's medical, emotional, and academic needs and wanted to find a foster home for all three children to have permanency, but the trial court did not hear about Mother's and Father's plans for the children because they chose not to testify. The trial judge also considered evidence that the children were doing well and it was in the children's best interest to remain in their current placement, which was providing the services the children needed. The trial court heard evidence that the children did not want to live with Mother because they were concerned about their safety. The trial judge also heard evidence that it was in the best interest for Mother's parental rights to be terminated so that Kendra and Kevin could have permanence and be placed in an adoptive placement and Kim could age out of the system and receive benefits.

As the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the trial court could reasonably conclude that termination of Mother's parental rights is in the best interest of Kim, Kendra, and Kevin. *See* Tex. Fam. Code Ann. §§ 161.001(b)(2), 263.307(a); *see also In re J.F.C.*, 96 S.W.3d at 266; *In re M.R.*, 243 S.W.3d at 821; *Holley*, 544 S.W.2d at 371-72. We conclude the Department established, by clear and convincing evidence that termination of Mother's parental rights is in the best interest of the children. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *In re C.A.C. Jr.*, 2011 WL 1744139, at **1, 5.

Mother does not challenge the sufficiency of the evidence to support the trial court's findings of predicate grounds (D), (E), or (O). The unchallenged predicate findings are binding on this court and sufficient to affirm the termination order. *See In re E.A.F.*, 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see In re R.S.C. Jr.*, No. 09-19-00174-CV, 2019 WL 5996358, at *4 (Tex. App.—Beaumont Nov. 14, 2019, no pet.) (mem. op.). Accordingly, we also conclude that the Department established, by clear and convincing evidence, that Mother committed the unchallenged predicate acts enumerated in sections 161.001(b)(1)(D), (E), and (O). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (O); *In re C.A.C. Jr.*, 2011 WL 1744139, at **1, 5. We overrule issue two.

Appointment of Department as Permanent Managing Conservator

In issue three, Mother challenges the trial court's appointment of the Department as the permanent managing conservator. Mother argued that the Department's appointment is only a consequence of the termination, which was supported by insufficient evidence.

Conservatorship determinations are subject to review for abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). We will reverse the trial court's appointment of a managing conservator only if we determine it was arbitrary or unreasonable. *Id.*; *In re E.G.P.*, No. 09-22-00330-CV, 2023 Tex. App. LEXIS 4197, at **29-30 (Tex. App.—Beaumont June 15, 2023, pet. ref'd). The Family Code creates a rebuttable presumption that a parent will be named the child's managing conservator unless that court finds that such appointment would not be in the best interest "because that appointment would significantly impair the child's physical health or emotional development[.]" Tex. Fam. Code Ann. § 153.131(a).

Section 161.207 of the Texas Family Code provides that if the trial court terminates the parent-child relationship with respect to both parents, the Court shall appoint a suitable, competent adult, the Department, or a licensed child-placing agency as managing conservator of the child. Tex. Fam. Code Ann. § 161.207(a). Here, the trial court terminated the parental rights of both parents. Having determined that sufficient evidence supports the trial court's order terminating

Mother's parental rights, Mother's challenge to the conservatorship appointment was subsumed in the issues related to the termination of her parental rights. *See In re D.N.C.*, 252 S.W.3d 317, 318-19 (Tex. 2008). We cannot conclude that the trial court abused its discretion by appointing the Department as the children's managing conservator. *See In re J.A.J.*, 243 S.W.3d at 616; *In re N.T.*, 474 S.W.3d at 480-81. We overrule issue three. Having overruled each of Mother's issues, we affirm the trial court's Order of Termination.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on June 11, 2024
Opinion Delivered August 15, 2024

Before Johnson, Wright and Chambers, JJ.